IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| SARAH FRANCES DRAYTON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MCINTOSH COUNTY, *et al.*, <br><br> Defendants. | Civ. No. 2:16-CV-00053-LGW-RSB |

**PLAINTIFFS' SURREPLY MEMORANDUM IN SUPPORT OF OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS**

**I.     INTRODUCTION**

Pursuant to Local Rule 7.6 and *Podger v. Gulfstream Aerospace Corp.*, 212 F.R.D. 609 (S.D. Ga. 2003), Plaintiffs respectfully submit this Surreply Memorandum in support of their Opposition to the Motion to Dismiss submitted by Defendants McIntosh County, McIntosh County Board of Tax Assessors, and Stephen Jessup in his official capacity (collectively "County Defendants").[1]

In this Surreply, Plaintiffs succinctly address several discrete issues presented in the County Defendants' Reply Brief in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 74) ("County Defs.' Reply"), including whether Plaintiffs have alleged elements of the disparate impact theory of proof; the County Defendants' request for judicial notice of data relating to the racial demographics of Sapelo Island and McIntosh County; the adequacy of Plaintiffs' disparate treatment allegations; and the County Defendants'

---

[1] In *Podger*, the Court held that surreplies are allowed under the Local Rules without prior leave of the Court. *Podger*, 212 F.R.D. at 9; *see also Brown v. Chertoff*, No. 406CV002, 2008 WL 5190638, at *1 (S.D. Ga. Dec. 10, 2008). Plaintiffs filed the Notice required under Local Rule 7.6 on May 11, 2016. *See* Doc. 75.

misinterpretation of Eleventh Circuit case law on Eleventh Amendment immunity. The County Defendants' remaining arguments are conclusory and undeveloped, were addressed in Plaintiffs' Opposition, and do not warrant further discussion in this Surreply.

## II.     ARGUMENT

### A. Plaintiffs Adequately Alleged a Disparate Impact Claim

The County Defendants argue for the first time in their Reply Memorandum that Plaintiffs have not adequately alleged a disparate impact claim. County Defs.' Reply at 14-18.[2] The County Defendants waived their challenges to Plaintiffs' disparate impact theory by failing to raise them in their Motion. *See Millwood-Jones v. Holder*, No. CV 214-035, 2016 WL 1189494, *8 n.5 (S.D. Ga. Mar. 22, 2016) (Wood, J.) (citing *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)).

Even if the Court were to consider the County Defendants' untimely new arguments regarding disparate impact, those arguments lack merit and should be rejected. First, the County Defendants object that Plaintiffs failed to use the phrase "disparate impact" in the First Amended Complaint ("FAC") (Doc. 29). "Disparate impact" is not a standalone claim, but instead is one of two *theories* of discrimination that Plaintiffs may use to prevail on their claims under the Fair Housing Act. *See, e.g., Davis v. Richmond, Fredericksburg & Potomac R.R. Co.*, 803 F.2d 1322, 1326-27 (4th Cir. 1986) (explaining that disparate impact and disparate treatment are simply two "theor[ies] of discrimination"). It is well settled that Plaintiffs need not "mechanically elect a disparate impact theory in the pleadings." *Id.* at 1327. It suffices to allege that a facially neutral practice's adverse effects fall disproportionately on members of a protected group. *See, e.g., United States v. Pennsylvania*, 110 F. Supp. 3d 544, 553 (M.D. Pa. 2015).

---

[2] The pin cites refer to the pagination in the footer of the memorandum and not to the pagination generated in the header by the CM/ECF system.

The FAC satisfies this minimal requirement. Plaintiffs allege that the full-time population of Hogg Hummock and Sapelo Island is disproportionately African-American as compared to the mainland, and it identifies specific policies that adversely affect housing conditions in Hogg Hummock. *See* FAC ¶¶ 166-167, 221, 249, 356 (allegations that the full-time population of Hogg Hummock and Sapelo Island is disproportionately African-American as compared to the mainland); *id*. ¶¶ 395, 403, 419 (allegations that County Defendants' conduct has an unjustified discriminatory effect on African Americans and Gullah-Geechee descendants). Indeed, the FAC contains ample additional allegations that the County Defendants apply facially neutral policies that disproportionately harm Sapelo Island and Hogg Hummock's disproportionately African-American population relating to, *inter alia*, budgetary decisions for policing, the imposition of the garbage removal fee, and the tax appraisal practices that Plaintiffs challenge.[3] If proven at trial with the evidence that Plaintiffs intend to gather through discovery, these allegations will satisfy the Supreme Court's recent discussion of disparate impact under the Fair Housing Act. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project Inc.*, 135 S. Ct. 2507, 2517-18 (2015) ("*ICP*").

Plaintiffs' FAC is therefore unlike the complaint the court found inadequate in *Jennings v. City of Tuscaloosa*, No. 7:13-cv-874-LSC, 2013 WL 5299304 (N.D. Ala. Sept. 19, 2013), because here, Plaintiffs have alleged sufficient facts to give Defendants adequate notice of their disparate impact theory, consistent with the Fair Housing Act disparate impact elements set out in *ICP*. *Cf. Jennings*, 2013 WL 5299304, at *3 (holding that plaintiff failed to plead any facts "to give [defendant] notice of the basis for its disparate impact claim" and that plaintiff's selective

---

[3] As shown below, under well-established precedent Plaintiffs may challenge the same conduct using disparate treatment and disparate impact theories.

enforcement allegations were "most logically read to support the disparate treatment claim and not the disparate impact claim").[4]

The County Defendants err in claiming that Plaintiffs are required to allege statistically significant disparities at the pleading stage in order to survive a motion to dismiss. At this stage, a plaintiff need not allege "percentages, statistics, or data demonstrating the [alleged] disproportionate effect . . . . on a protected group." *United States v. Pennsylvania*, 110 F. Supp. 3d at 553 (quoting *McQueen v. City of Chicago*, 803 F.2d 892, 906 (N.D. Ill. 2011)); *see also Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464, 469-70 (S.D.N.Y. 2009) ("It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery"); *NAACP v. Ameriquest Mortg. Co.*, 635 F. Supp. 2d 1096, 1104 (C.D. Cal. 2009) (denying motion to dismiss disparate impact Fair Housing Act claim where plaintiff alleged that defendant's challenged lending policies were "felt disproportionately by African American consumers and members of the NAACP, compared to similarly situated Caucasians"); *Merritt v. WellPoint, Inc.*, 615 F. Supp. 2d 440, 445-46 (E.D. Va. 2009) (holding that plaintiffs stated a disparate impact claim by simply alleging that neutral practices of the defendant had a disparate impact on members of the protected group); *Wood v. City of San Diego*, No. 03CV1910-MMA(POR), 2010 WL 2382335, at *1, *6 (S.D. Ca. June 10, 2010) (denying motion to dismiss disparate impact claim, where plaintiff alleged that a facially neutral policy harmed unmarried members and that the "overwhelming majority of unmarried members are women"); *Hall v. Kone Inc.*, No. 3:10-cv-2534-D, 2011 WL 3510861, at *2 (N.D.

---

[4] The FAC's specific allegations of neutral policies that disproportionately harm African Americans of Gullah-Geechee descent, who make up a majority of the Hogg Hummock population, also distinguish this case from *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495 (11th Cir. 2015), in which the plaintiff completely failed to allege either the existence of a neutral policy or a disproportionate effect on his protected group.

4

Tex. Aug. 10, 2011) (holding that "statistical disparity is an element of plaintiffs' prima facie proof, not a pleading requirement," that the plaintiff "need not establish a prima facie case at the pleadings stage," and that it sufficed to allege that the challenged policy disproportionately harmed members of the protected group).[5]

Last, there is no merit in the County Defendants' suggestion that Plaintiffs cannot proceed with a disparate impact theory because they also allege disparate treatment. Courts have routinely recognized that a plaintiff may proceed simultaneously on theories of disparate treatment and disparate impact as alternative and complementary theories of recovery. *See, e.g.*, *Wright v. Nat'l Archives & Records Serv.*, 609 F.2d 702, 711 (4th Cir. 1979) (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978)); *Watson v. Clear Channel Broadcasting Inc.*, No. CIV.A. 13-5503, 2014 WL 258999, at *6 (E.D. La. Jan. 22, 2014) (holding that a complaint's "alternative allegations of disparate treatment do not render insufficient disparate impact allegations . . . . Plaintiffs are certainly allowed to plead in the alternative . . . ." (internal quotation marks omitted)). *Jennings* does not establish a contrary proposition; instead, it merely holds that a claim based on a theory of selective enforcement is exclusively disparate treatment because it requires a showing that the defendant intentionally enforced a law or policy against members of one group and not against members of another group. Plaintiffs do not assert any selective enforcement claims.[6]

---

[5] The cases that the County Defendants cite in their brief regarding the need for a statistical showing were before the courts on summary judgment or a bench trial, at which point a burden of proof, not pleading, applies. *See ICP*, 135 S. Ct. 2507 (bench trial); *Cardelle v. Miami Beach Fraternal Order of Police*, 593 F. App'x 898 (11th Cir. 2014) (summary judgment under Title VII); *Lieberman v. Miami-Date Cnty.*, No. 99-1714-CIV-KING, 2000 WL 1717649, at *7 (S.D. Fla. Aug. 16, 2000) (summary judgment under Title VII); *Roy v. Bd. of Cnty. Comm'rs*, 607 F. Supp. 2d 1297 (N.D. Fla. 2009) (summary judgment).

[6] The County Defendants cite a Westlaw editorial headnote to the case *City of Miami v. Bank of Am. Corp.*, No. 13-24506-CIV, 2016 WL 1072488 (S.D. Fla. Mar. 17, 2016), as their

5

## B. The County Defendants' Purported Census Data Do Not Justify Rule 12(b)(6) Dismissal of Plaintiffs' Claims

The County Defendants ask for the first time in their Reply that the Court take judicial notice of "public record Census statistics for Sapelo Island and for McIntosh County, Georgia, as a whole taken from the 2010 Census." County Defs.' Reply at 2. The County Defendants then proceed to assert that the population on Sapelo Island is a slight majority African-American. The County Defendants' late citation to and request for analysis of the Census data as a basis for dismissing Plaintiffs' discrimination claims is inappropriate and unpersuasive at this stage for a number of reasons.

First, the information supporting Plaintiffs' allegation in the FAC that "the permanent residents of Sapelo Island are virtually all African American," FAC ¶ 166, is substantially based on direct knowledge of the race of the individuals living on the Island. Second, the County Defendants' reference to Census data is not accompanied by any citation or description of how the data was calculated, making it impossible to determine which people or households are being counted in the data. Third, the County Defendants' data do not distinguish among households in Hogg Hummock, the focal point of Plaintiffs' complaint, and other areas of Sapelo Island, which Plaintiffs allege are partially inhabited by temporary, predominantly white employees of the State and the University of Georgia. Finally, the County Defendants' request for judicial notice marks a reversal of position from their opening brief where they cited Census data but explicitly stated that they would not rely on it.

Plaintiffs' allegations regarding the racial composition of Sapelo Island and the Hogg

---

authority for the claim that a plaintiff cannot challenge the same conduct using the disparate treatment and disparate impact theories. That is not what *City of Miami* held. The Court found that the plaintiffs had not alleged a disparate impact claim because the policies that they identified were not facially neutral. *Id*. at *4. Here, as set forth above, Plaintiffs do challenge facially neutral policies, which are entirely susceptible to a disparate impact theory.

Hummock community are based on Census data as well as Plaintiffs' direct knowledge of the races of the permanent residents of Sapelo Island. Plaintiffs are relatives of or otherwise personally know virtually all of the owners of property on the Island and, as a result, can accurately allege the racial composition of the Island in general and Hogg Hummock in particular. They are also familiar on a one-on-one basis with who lives permanently on the Island and who is a temporary or occasional resident. Accordingly, to the extent the County Defendants have different information regarding the demographics of the Island, it is likely less accurate— the Census tract and block group that encompass the Island also include areas on the mainland and the Census blocks that make up Hogg Hummock also include other areas of Sapelo Island— than the personal knowledge of the residents themselves. At a minimum, a motion to dismiss is not the proper vehicle to analyze and interpret different sources of data regarding the demographics of Sapelo Island and Hogg Hummock, an issue that is more appropriate for expert opinion and analysis following discovery.

Next, the County Defendants make assertions about what the 2010 Census data show regarding the demographics of Sapelo Island, but they include no citations, making it is impossible to confirm or otherwise assess their assertions regarding the data. As noted above, the relevant geographic areas do not fall neatly within pre-designated Census tracts and blocks. One cannot simply search publicly accessible Census databases for data on "Sapelo Island" or "Hogg Hummock." Further, it is unclear whether these data are based on people who identify only as one race or include people who identify as multiple races.

Even assuming *arguendo* that the County Defendants' unsupported assertions about the demographics of Sapelo Island are accurate, these data are legally irrelevant to Plaintiffs' discrimination claims, as Plaintiffs have already shown in their Opposition. *See* Pls.'

Consolidated Opp. to State and County Defs.' Mots. to Dismiss FAC (Doc. 49) ("Pls.' Opp.") at 46-48. The only residential area of Sapelo Island that is not employee housing associated with the Department of Natural Resources ("DNR") or the University of Georgia ("UGA") is in Hogg Hummock. *See* FAC ¶ 166. The County's responsibilities for providing services to DNR and UGA employees being housed on the Island by their employers is not comparable to the responsibilities it has for providing services to residents of Hogg Hummock, a residential area with private land and housing that is subject to County ordinances, including County zoning ordinances. Accordingly, data regarding the racial demographics of all areas on Sapelo Island are not as probative as data regarding the residents of Hogg Hummock.

The County's data appear to make no distinction between these areas and therefore include predominantly white temporary residents who are employees of the DNR and students and researchers affiliated with the University of Georgia, Marine Institute ("UGAMI"), while Plaintiffs have made the relevant allegation that the Hogg Hummock community is the only permanent, full-time population on Sapelo Island and that it is almost exclusively African-American. FAC ¶¶ 166-167.

While the County Defendants assert "there are no white sections or neighborhoods and no African-American sections or neighborhoods on Sapelo Island. Almost everyone lives together in Hogg Hammock . . . .," County Defs.' Reply at 8, this assertion contradicts the allegations in the FAC—wherein Plaintiffs allege that white, temporary residents live on State-owned land associated with UGAMI and the National Estuarine Research Reserve, *id.* ¶ 166—and is inconsistent with the County's own data, which suggest that there are residents outside of Hogg Hummock.

The Census data presented by the County Defendants therefore prompt a number of

8

factual questions that cannot be resolved on a motion to dismiss. Once this case proceeds to discovery, the parties will be have an opportunity to gather and present data regarding racial demographics, and ultimately a trier-of-fact will determine the actual racial composition of the Island and Hogg Hummock. Such a determination cannot, and should not, be made at the motion to dismiss stage.

For all of these reasons, the Census data the County Defendants cite do not satisfy the criteria for judicial notice. The Court may take judicial notice only of adjudicative facts that are "generally known within [its] territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The County Defendants have not provided the Court with any citations, information, or supporting documentation concerning the source of the statistical data they recite.

The County Defendants' request for judicial notice of these legally irrelevant data is moreover untimely and improper. They cited the same data relating to the purported demographics of Sapelo Island in their opening brief, but at that time, the County Defendants claimed that they were providing these data "strictly for informational purposes" and explicitly represented that they did not rely on these data "or on anything else outside of the pleadings in support of their Motion to Dismiss." County Defs.' Br. ISO Mot. to Dismiss Pls.' First Amended Compl. (Doc. 46-1) ("County Defs.' Mem.") at 5 n.1. Plaintiffs therefore did not address these data in their Opposition, based on the County Defendants' representation. The Court should reject the County Defendants' new request for judicial notice of the very data that these Defendants previously, explicitly stated they did not intend to rely on. Arguments made for the first time in a reply are waived. *See, e.g.*, *Millwood-Jones*, 2016 WL 1189494, at *8 n.5. The application of the waiver doctrine is especially justified here given the County Defendants' prior

representation that they were not relying on these Census data to support their motion to dismiss. *See, e.g.*, *Tindall v. H & S Homes, LLC*, No. 5:10-CV-044 CAR, 2011 WL 5007827, at *2 (M.D. Ga. Oct. 20, 2011) (recognizing that courts apply waiver where a "movant changes theories midstream and makes new arguments in their reply brief").

For all of these reasons, it would be improper to take judicial notice of the County Defendants' Census data or to dismiss Plaintiffs' claims based on the data presented by the County.

### C. Plaintiffs Adequately Stated Disparate Treatment Claims

#### 1. *Plaintiffs Are Not Required to Allege the Existence of Similarly Situated White Comparators at the Pleading Stage*

Plaintiffs have shown that the well-accepted *Arlington Heights* framework for assessing a claim of discrimination against a governmental entity does not contemplate a showing of differential treatment of similarly situated comparators, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977), and that, nonetheless, Plaintiffs have alleged the existence of similarly situated white comparators. *See* Pls.' Opp. at 41-46. In their Reply, however, the County Defendants continue to assert that Plaintiffs' disparate treatment claims should be dismissed because Plaintiffs purportedly do not allege the existence of better treated, similarly situated white comparators. County Defs.' Reply at 10-12. The County Defendants again ignore the *Arlington Heights* framework and Plaintiffs' allegations and then rely on cases that were decided at the summary judgment stage involving individual plaintiffs challenging conduct directed specifically at them—for example, adverse employment decisions or university admission decisions—which provide no guidance on the proper analysis for a motion to dismiss in this case involving claims challenging broadly applicable governmental conduct.

Defendants first cite the unpublished case *McCone v. Pitney Bowes, Inc.*, 582 Fed. App'x

10

798 (11th Cir. 2014), to suggest that post-*Twombly*, a plaintiff must allege a prima facie case of discrimination to survive a motion to dismiss. This is simply not the case. Plaintiffs cited the Eleventh Circuit's more recent, published decision in *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1222 (11th Cir. 2016), in which the court made clear that a complaint alleging discrimination under the Fair Housing Act need only "state the facts on which the plaintiff relies to support" the claim, in other words "that the adverse action was taken *because of* a [protected class,]" and that "the allegations in the complaint should be judged by the statutory elements of an Fair Housing Act claim rather than the structure of the prima facie case." *Id.* at 1221-22 (internal quotation marks omitted); *see also id.* at 1221 ("Before discovery has unearthed relevant facts and evidence, [at the pleading stage] it may be difficult to define the precise formulation of the required prima facie case in a particular case." (internal quotation marks omitted)).

In fact, *McCone* is not to the contrary. In *McCone*, the Eleventh Circuit affirmed dismissal of the plaintiff's employment discrimination complaint because the plaintiff failed to allege that she suffered an adverse employment action, <u>which was a statutory element of her Title VII claim</u>. 582 F. App'x at 801.

The remaining cases that the County Defendants cite for their incorrect argument that a plaintiff must plead the elements of a prima facie case were decided at the summary judgment stage and therefore turn on the adequacy of the plaintiff's proof, not the adequacy of the pleading. They moreover overwhelmingly involve challenges to selective enforcement, which unlike Plaintiffs' disparate treatment claims here, inherently require proof that the defendant did not enforce the challenged law against a similarly situated comparator. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008) (affirming summary judgment on plaintiff's

selective enforcement claim, which necessarily requires evidence that the defendant did not enforce the challenged law against a similarly situated comparator); *Roy v. Bd. of Cnty. Comm'rs*, 607 F. Supp. 2d 1297 (N.D. Fla. 2009) (summary judgment on claim challenging discriminatory enforcement of zoning and building codes).[7]

### 2. *The County Defendants' Remaining Scattershot Attacks on Plaintiffs' Disparate Treatment Claims Do Not Justify Dismissal*

#### a) **The County Defendants concede that the Court need not reach their argument that the Fair Housing Act does not apply "post-acquisition"**

The County Defendants have backpedaled from their argument that the Fair Housing Act is limited to discrimination occurring in connection with the acquisition of housing, now suggesting Plaintiffs' conclusive presentation of case law establishing a much broader application of the Fair Housing Act is "not really in need of analysis" and "purely academic" and has no bearing on this case. County Defs.' Reply at 18-19. Of course, Plaintiffs addressed the "post-acquisition" issue because the County Defendants raised it as grounds for dismissing Plaintiffs' Fair Housing Act claims. *See* County Defs.' Mem. at 20. The County Defendants now appear, however, to have abandoned the argument and do not want the Court to reach it.

---

[7] The remaining cases cited by the County Defendants were also decided on summary judgment. *See Douglas Energy Relief Ass'n v. City of Douglas*, 556 F. App'x 820 (11th Cir. 2014) (summary judgment on plaintiff's claim challenging selective enforcement of allegedly fraudulent electrical billing practices); *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (summary judgment on plaintiff's education discrimination claim); *Rollins v. Bd. of Trustees of the Univ. of Ala.*, No. 2:12-cv-2458-AKK, 2014 WL 4829540 (N.D. Ala. Sept. 29, 2014), *aff'd*, No. 14-14882, 2016 WL 1399375 (11th Cir. Apr. 11, 2016) (same); *Carr v. Bd. of Regents of the Univ. Sys. Of Ga.*, 249 F. App'x 146 (11th Cir. 2007) (same); *Forest Glen LLC v. City of Montgomery*, No. 2:07-cv-836-WKW, 2009 WL 387146 (M.D. Ala. Feb. 13, 2009) (summary judgment on challenge to application of facially neutral statute); *Boykin v. Bank of Am. Corp.*, 162 F. App'x 837 (11th Cir. 2005) (summary judgment in an individual lending discrimination case); *Jackson v. City of Auburn*, 41 F. Supp. 2d 1300 (M.D. Ala. 1999) (summary judgment on case alleging differential application of zoning laws).

For all the reasons set forth in Part III(D)(3) of Plaintiffs' Opposition (Doc. 49 at 48-54), and in Part III(B) of the United States' Statement of Interest (Doc. 58 at 6-15), the Fair Housing Act applies to the conduct at issue in the FAC, including conduct occurring after Plaintiffs' acquisition of housing in Hogg Hummock.

### b) The County Defendants err in asserting on their own speculative factual allegations that go beyond the four corners of the FAC

The County Defendants improperly rely on their own factual allegations—in addition to their statements about 2010 Census data discussed above—that go beyond the four corners of the FAC, which the Court cannot consider on this Motion to Dismiss. For example, the County Defendants speculate, without any basis, that Plaintiffs' properties are beachfront properties and that this explains the exorbitant property tax increases that Plaintiffs challenge and Defendant Jessup's refusal to provide police services on Sapelo Island. County Defs.' Reply at 14. None of this is alleged in the FAC—to the contrary, the FAC alleges that Plaintiffs and other Gullah-Geechee families were forced off of "desirable waterfront properties . . . and onto less desirable and smaller parcels in Hogg Hummock, a low-lying swampy enclave in the southern portion of the Island." FAC ¶ 181. The Court cannot consider the County Defendants' speculative assertions, which contradict well-pleaded allegations in the FAC, in ruling on the Motion to Dismiss. *See, e.g.*, *Nunez v. J.P. Morgan Chase Bank, N.A.*, No. 15-12188, 2016 WL 1612832, at *3 (11th Cir. Apr. 22, 2016) (holding that district court erred in dismissing complaint based on defendant's "unsupported inferences about [its] intentions and versions of the facts that contradict the allegations in [plaintiff's] amended complaint"); *Berry v. Beneficial Mortg. Co. of Georgia*, No. 1:10-CV-3259-GET-WEJ, 2011 WL 12828772, at *4 (N.D. Ga. May 4, 2011), *report and recommendation adopted,* No. I:10-CV-03259-MHS, 2011 WL 12828835 (N.D. Ga. June 27, 2011) (defendants' speculation cannot support a motion to dismiss).

For the same reason, the Court cannot rely on the County Defendants' attempt to justify the alleged discrimination based on Sapelo Island's location across the Doboy Sound. County Defs.' Reply at 12-13, 19. Whether that location justifies the discriminatory treatment that Plaintiffs challenge is a fact question for trial, not something that can be accepted without proof and used to dismiss Plaintiffs' claims at the pleading stage.

### c) The FAC alleges specific conduct by the County Defendants

The County Defendants assert throughout their Reply that Plaintiffs' allegations about their discriminatory conduct are conclusory or otherwise deficient. This simply ignores the extensive, specific allegations in the FAC concerning the County Defendants' discriminatory conduct. For example, Plaintiffs allege that the County provides unequal housing and housing-related services on Sapelo as compared to the mainland (including medical, fire, and police services, trash removal, road maintenance, and insufficient water and sewer services), FAC ¶¶ 221-284; discriminates in the application of its own zoning code, *id*. ¶¶ 311-322; engaged in discriminatory property appraisals, *id*. ¶¶ 324-349; refused to consider legislation that would have established Hogg Hummock as a historical district with a preferential tax assessment, *id*. at ¶¶ 350-352; and has discriminated in the use of federally allocated financial assistance. *Id*. at ¶¶ 353-366.

### D. Defendants Jessup and Board of Tax Assessors Have Not Met Their Burden to Establish They Are Shielded from Suit by the Eleventh Amendment

Plaintiffs conclusively demonstrated that the Eleventh Amendment does not shield Defendant Jessup or Defendant Board of Tax Assessors from suit. The County Defendants' Reply does not establish anything to the contrary and indeed misstates the holdings of the two Eleventh Circuit cases on which Defendants Jessup and Board of Tax Assessors rely.

### *1. The Eleventh Circuit Approved the Holding in* Keene *Cited by Plaintiffs*

Defendant Jessup incorrectly contends that the Eleventh Circuit has subsequently disavowed the holding in *Keene v. Prine*, 477 F. App'x 575, 579-80 (11th Cir. 2012), on which Plaintiffs rely in their Opposition.

Plaintiffs cited *Keene* for its holding that where an adverse judgment is "more directly . . . met by county funds . . . . [t]o the extent that the state is insulated from paying any adverse judgment against the Sheriff's Office, that entity's autonomy with respect to this 'core concern' of the Eleventh Amendment weighs heavily in favor of denying immunity." *Id.* at 579-80 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994); *Abusaid v. Hillsborough Cnty. Bd. Of Cnty. Comm'rs*, 405 F.3d 1298, 1312-13 (11th Cir. 2005)), *quoted in* Pls.' Opp. at 23. The Eleventh Circuit did not invalidate this analysis in the *Pellitteri v. Pine* decision, 776 F.3d 777 (11th Cir. 2015). To the contrary, in *Pellitteri* the Eleventh Circuit <u>affirmatively approved</u> of this very conclusion in *Keene* "to the extent that the state treasury will be spared here from paying any adverse judgment, this factor weighs in favor of denying immunity." *Pellitteri*, 776 F.3d at 783 (citing with approval *Keene*, 477 F. App'x at 579, and *Abusaid*, 405 F.3d 1313). This is the precise holding in *Keene* that Plaintiffs cited.

In *Pellitteri*, the Eleventh Circuit did disavow *Keene* to the extent that *Keene* held that (1) "'sheriffs are largely independent from the State when they make personnel decisions'" and (2) the fact that counties fund sheriff's departments weighed in favor of Eleventh Amendment immunity. *Pellitteri*, 776 F.3d at 781-82 (quoting *Keene*, 477 F. App'x at 578). Plaintiffs' allegations in this case do not involve the Sheriff's role in making personnel decisions and Plaintiff did not rely the holdings in *Keene* that were rejected in *Pellitteri*.

2. **Ballard v. Chattooga County Board of Tax Assessors *Is Limited to a County Board of Tax Assessor's Role as an Employer***

Plaintiffs thoroughly distinguished *Ballard v. Chattooga County Board of Tax Assessors*, 615 F. App'x 621 (11th Cir. 2015), in their Opposition and established that Defendant Board of Tax Assessors is not operating as an arm of the State in discharging its appraisal functions. *Ballard* involved a Board of Tax Assessors in its role as employing appraisal staff. The analysis of that role under the arm-of-the-state test results in a different conclusion than the analysis that is relevant here of whether the Board of Tax Assessors operates as an arm of the state in relation to its conducting appraisal functions. In its Opposition, Defendant Board of Tax Assessors provides no substantive response to Plaintiffs' reading of *Ballard* and instead merely asserts, without any support, that Plaintiffs' reading of *Ballard* is "illogical;" though the Board of Tax Assessors does concede that *Ballard* was limited to the Board's entirely distinct personnel function.

### III.   CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' Consolidated Opposition to Motions to Dismiss, the County Defendants' Motion to Dismiss should be denied.

//

//

//

//

Dated: May 12, 2016

Respectfully submitted,

| | |
|---|---|
| /s/ Jamie L. Crook | /s/ Robert Jackson |
| Reed N. Colfax (admitted *pro hac vice)* | Robert Jackson (GA Bar #387750) |
| Ryan C. Downer (admitted *pro hac vice*) | ROBERT B. JACKSON, IV, LLC |
| Jia M. Cobb (admitted *pro hac vice*) | 260 Peachtree Street, Suite 2200 |
| Jamie L. Crook (admitted *pro hac vice*) | Atlanta, Georgia 30303 |
| RELMAN, DANE & COLFAX PLLC | Tel: 404-313-2039 |
| 1225 19th St., NW, Suite 600 | rbj4law@gmail.com |
| Washington, D.C. 20036 | |
| Tel: 202-728-1888 | |
| Fax: 202-728-0848 | |
| rcolfax@relmanlaw.com | |
| rdowner@relmanlaw.com | |
| jcobb@relmanlaw.com | |
| jcrook@relmanlaw.com | |

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 12th day of May, 2016, a copy of the foregoing Plaintiffs' Surreply Memorandum in Support of Opposition to County Defendants' Motion to Dismiss was filed on the CM/ECF system for the Southern District of Georgia, which will send notification of such filing to the following:

John E. Bumgartner
Richard K. Strickland
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue, Post Office Box 220
Brunswick, GA 31521-0220
Tel: (912) 264-8544
Fax: (912) 264-9667
jbumgartner@brbcsw.com
rstrickland@brbcsw.com

*Attorneys for Defendants McIntosh County, Sheriff Stephen Jessup, and McIntosh County Board of Tax Assessors*

Julie Adams Jacobs, Senior Assistant Attorney General
Michelle J. Hirsch, Assistant Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
Tel: (404) 463-5989
Fax: (404) 657-3239
jjacobs@law.ga.gov
mhirsch@law.ga.gov

*Attorneys for Defendants State of Georgia, Governor Nathan Deal, Georgia Department of Natural Resources, Georgia Department of Natural Resources Commissioner Mark Williams, and Sapelo Island Heritage Authority*

                                              /s/ Jamie L. Crook
                                              Jamie L. Crook
                                              *Attorney for Plaintiffs*