# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

SARAH FRANCES DRAYTON,　　＊
et al.,　　　　　　　　　　＊
　　　　　　　　　　　　　　＊
　　Plaintiffs,　　　　　　＊
　　　　　　　　　　　　　　＊　　CV 216-053
　v.　　　　　　　　　　　　＊
　　　　　　　　　　　　　　＊
McINTOSH COUNTY, GEORGIA,　＊
et al.,　　　　　　　　　　＊
　　　　　　　　　　　　　　＊
　　Defendants.　　　　　　＊

## ORDER

Presently before the Court is Plaintiffs' Motion for Reconsideration of the Court's June 17, 2016, Order. Dkt. No. 92. Plaintiffs ask that the Court revisit and modify the portion of that Order dismissing their claims against Defendant Sapelo Island Heritage Authority ("SIHA") on sovereign immunity grounds. Id. For the reasons stated below, Plaintiffs' Motion for Reconsideration (dkt. no. 92) is **DENIED**.

## BACKGROUND

As the Court's June 17, 2016, Order describes in detail the alleged events giving rise to this action, see dkt. no. 89, pp. 7-10, the Court need not repeat that discussion in this Order. However, to the extent that certain facts are relevant to

Plaintiffs' Motion for Reconsideration, the Court includes them here.

Specifically, the Court notes that Plaintiffs, who are members of the African American Gullah-Geechee community on Sapelo Island, Georgia, filed this action against several governmental Defendants alleging violations of their federal constitutional and statutory rights. Dkt. No. 29 ("Pl.s' Am. Compl."), ¶¶ 19-138. Plaintiffs have named as Defendants, among others, SIHA, the State of Georgia (the "State"), Governor Nathan Deal, the Georgia Department of Natural Resources (the "DNR"), and Commissioner of the DNR Mark Williams (collectively, the "State Defendants"). See id. at ¶¶ 139-63. According to Plaintiffs, the State has a 97% ownership interest in Sapelo Island; the DNR is responsible for generally managing the land; and SIHA was created by the State legislature for the purpose of preserving the island's cultural and historic values. Id. at ¶¶ 147, 213. Plaintiffs' claims for damages and declaratory relief against SIHA relate to its decisions regarding the use of property on Sapelo Island. See id. at ¶¶ 201-12, 386-95, 420-42.

The State Defendants filed a Motion to Dismiss on March 21, 2016, arguing, in part, that SIHA was entitled to sovereign immunity against Plaintiffs' claims. Dkt. No. 48-1, pp. 9-11. In its June 17, 2016, Order, the Court granted that portion of

AO 72A
(Rev. 8/82)

2

the State Defendants' Motion and directed that SIHA be dismissed from this lawsuit. Dkt. No. 89, pp. 37-41. Relying on the Eleventh Circuit's four-factor test set forth in Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003), and its decision in Fouche v. Jekyll Island-State Park Authority, 713 F.2d 1518, 1519 (11th Cir. 1983), the Court found that "SIHA was functioning as an arm of the State when it made decisions relating to the use and development of Sapelo Island property," and, "[a]s a result, SIHA is immune to Plaintiffs' suit for damages and declaratory relief on the basis of those decisions." Id. at p. 41.

On July 6, 2016, Plaintiffs submitted the instant Motion for Reconsideration of the Court's Order. Dkt. No. 92. Plaintiffs argue that the Court erred in finding that SIHA is an arm of the State entitled to sovereign immunity, because the Court (1) did not consider language in SIHA's enabling statute stating that SIHA is "not the State of Georgia or an agency thereof"; (2) relied on Georgia statutes that apply to agencies, even though SIHA is an authority rather than an agency; (3) drew erroneous conclusions regarding the State's control over and financial support of SIHA from the fact that SIHA's property is deemed "public property"; and (4) determined that SIHA's members are compensated with State funds, even though no provision of State law expressly provides as much. Dkt. No. 92-1, pp. 1-7. For these reasons, Plaintiffs request that the Court reconsider

its ruling on Defendants' Motion as to the claims against SIHA and, in doing so, find that SIHA is not an arm of the State and reinstate this entity as a Defendant in this action. Id. at p. 8.

**STANDARD OF REVIEW**

A court's reconsideration of an earlier order is "an extraordinary remedy, which should be granted sparingly." Deep Sea Fin., LLC v. QBE Ins., Ltd., No. CV 410-219, 2013 WL 1288972, at *2 (S.D. Ga. Mar. 27, 2013) (quoting Whitesell Corp. v. Electolux Home Prods., Inc., No. CV 103-050, 2010 WL 4025943, at *7 (S.D. Ga. Oct. 13, 2010)). A court deciding a motion for reconsideration "must balance the need for finality and judicial economy against the need to render just decisions." Id. (quoting Whitesell Corp., 2010 WL 4025943, at *7). Such a motion "should not be used to relitigate issues which have already been found lacking." Id. (quoting Whitesell Corp., 2010 WL 4025943, at *7). Rather, reconsideration is appropriate only where the moving party demonstrates the following: "(1) an intervening change of law; (2) the availability of new evidence; [or] (3) the need to correct a clear error of law or prevent manifest injustice." Id. (quoting Whitesell Corp., 2010 WL 4025943, at *7).

**DISCUSSION**

The Court addresses Plaintiffs' proposed grounds for reconsideration of the Court's previous Order in turn.

**I. Language in SIHA's Enabling Statute**

Plaintiffs contend that the Court, in considering how State law defines SIHA for the purposes of the first <u>Manders</u> factor, disregarded statutory language establishing SIHA as an entity separate from and different than the State. Dkt. No. 92-1, p. 3 (quoting O.C.G.A. § 12-3-443(b)).

As the Court noted in its prior Order, O.C.G.A. § 12-3-443 ("Section 12-3-443") defines SIHA as both an instrumentality of the State and a public corporation. Dkt. No. 89, p. 39 (citing O.C.G.A. § 12-3-443(a)). Section 12-3-443 goes on to state that SIHA is "not the State of Georgia or an agency thereof." O.C.G.A. § 12-3-443(b). The statute further indicates, as set forth in the previous Order, that SIHA is assigned to the DNR for administrative purposes. <u>Id.</u> § 12-3-443(c).

Plaintiffs' challenge to the Court's analysis of the first <u>Manders</u> factor is unavailing. In <u>Manders</u>, the Eleventh Circuit observed that the Georgia Constitution labels sheriffs as "county officers." 338 F.3d at 1312 (quoting Ga. Const. art. IX, § 1, para. 3(a)). Nevertheless, the Court held that the defendant sheriff in that case was an arm of the State, not the county, and thus was entitled to immunity. <u>Id.</u> Rather than

AO 72A
(Rev. 8/82)

5

focusing on the nomenclature given under Georgia law, the Court looked to how State law defines the office and where it vests control over the same. Id. The Court determined that State law creates the sheriff's office as an office independent from the county entity itself, grants the State all control over the sheriff, and prevents the county from having any control over him. Id.

In the case at bar, Section 12-3-443's disclaimer of SIHA's State or agency status is not conclusive. The relevant statutory scheme defines SIHA's purpose and designates certain State officials and individuals appointed by the Governor as its member officers. O.C.G.A. §§ 12-3-441(b), 12-3-444(a). Section 12-3-443 establishes SIHA's role in the executive branch as an authority assigned to the DNR for administrative purposes. Id. § 12-3-443(c). Significantly, the statutes set forth an exclusive list of SIHA's rights and responsibilities and contemplate substantial State, not local, government involvement in its carrying out of the same. See id. § 12-3-445 ("The authority shall have the following powers and duties, in addition to other powers and duties set forth in this part."); id. § 12-3-448 (requiring that SIHA submit its financial books and records annually to the State auditor for inspection); id. § 12-3-450 (designating the Georgia Attorney General as responsible for providing legal services on SIHA's behalf in the

event of suit). In these ways, as in <u>Manders</u>, State law creates SIHA as an entity of the State, without any control reserved for county or other local governing authority.

Accordingly, the nomenclature assigned to SIHA by its enabling statute does not distinguish this case from <u>Fouche</u>, 713 F.2d at 1518, in any meaningful way. Rather, as the Court discussed in the prior Order, Georgia law defines SIHA in a similar manner as it does the Jekyll Island-State Park Authority (the "Park Authority") at issue in <u>Fouche</u>—as an instrumentality of the State and public corporation that operates under the executive branch of the State government and is subject to State control. <u>See</u> Dkt. No. 89, pp. 38-40 (citing <u>Fouche</u>, 713 F.2d at 1520-21). This case thus warrants a finding, like that in <u>Fouche</u>, that the first <u>Manders</u> factor suggests that SIHA is an arm of the State entitled to sovereign immunity.

## II. Statutes Applicable to Agencies

Plaintiffs also challenge the Court's evaluation of the State's definition of and control over SIHA under the first and second <u>Manders</u> factors, on the grounds that the Court erroneously relied on statutes applicable to a State agency, and not to an authority such as SIHA. Dkt. No. 92-1, pp. 4-5.

Pursuant to O.C.G.A. § 50-4-3(a) ("Section 50-4-3(a)"), "[a]n agency assigned to a department for administrative purposes only" must fulfill certain duties, including

"prepar[ing] its budget, if any, and submit[ting] its budgetary requests, if any, through the department." O.C.G.A. § 50-4-3(a)(2). The statute goes on to list the responsibilities of the department to which such an agency is assigned. Id. § 50-4-3(b). In the final subsection, O.C.G.A. § 50-4-3(c) ("Section 50-4-3(c)"), the statute reads as follows:

> Whenever any authority is assigned for administrative purposes, it means only that the state department through which the authority deals with the state shall be that department to which the authority is assigned. Any authority created by state law shall retain its separate identity as an instrumentality of the state and a public corporation. The department to which an authority is assigned is authorized, only with the approval of the authority, to perform for such authority any or all of the functions set forth in subsection (b) of this Code section.

Plaintiffs' argument that the Court's application of Section 50-4-3 requires reconsideration lacks merit. In reaching its decision that the Park Authority in Fouche was an arm of the State entitled to sovereign immunity, the Eleventh Circuit noted that the authority was an instrumentality of the State and public corporation, and that it was assigned to the DNR for administrative purposes only. 713 F.2d at 1520. The Court nevertheless applied the requirements applicable to agencies under Section 50-4-3(a), in reasoning that the Park Authority was required to submit its budget to the State through the DNR. Id. (citing O.C.G.A. § 50-4-3(a)). Given the similarities between the enabling statute of the authority in

Fouche and that of SIHA in this case, the Fouche Court's ruling provides an adequate basis for finding, at the dismissal stage, that SIHA is subject to the requirements of an agency under Section 50-4-3(a).

Even assuming that SIHA's status as an authority takes it outside the scope of Section 50-4-3(a), and instead subjects it to the provisions applicable to an "authority . . . assigned for administrative purposes" under Section 50-4-3(c), SIHA still would be afforded immunity under the first and second Manders factors. Instrumentalities of the State are afforded immunity under Georgia law. Id. at 1520 n.2 (citing C.W. Matthews Contracting Co., v. Dep't of Transp., 286 S.E.2d 756, 756 (Ga. Ct. App. 1981)). Notwithstanding the dual nature of an authority as both an instrumentality and public corporation, the fact that an authority, like SIHA, is included at all in the chapter of the Georgia Code entitled, "Organization of Executive Branch Generally"—whether it be as an agency under Section 50-4-3(a) or an authority under Section 50-4-3(c)—"suggests that an authority should be considered as an arm of the [S]tate rather than as a municipal corporation or political subdivision." Id. at 1520.

Moreover, SIHA's statutory scheme itself specifically mandates that the entity submit its financial books and records to the State auditor each year for review. O.C.G.A. § 12-3-448.

This level of State involvement in SIHA's financial matters weighs heavily in favor of finding that SIHA functions as an arm of the State. See Fouche, 713 F.2d at 1520-21 (discussing a similar requirement in holding that the Park Authority functioned as an arm of the State); see also Hines v. Ga. Ports Auth., 604 S.E.2d 189, 194 & n.43 (Ga. 2004) (holding that the ports authority was not an arm of the State, based, in part, on the finding that, "unlike many [S]tate authorities, the [ports] [a]uthority is not assigned to any executive department for administrative purposes and is not required to have its books inspected by the State auditor").

Plaintiffs argue that the degree of State control over SIHA's financial affairs is significantly less than that over the Park Authority in Fouche, citing a Georgia statute creating a General Assembly committee for the specific purpose of overseeing the budget and legal agreements of the Park Authority. Dkt. No. 92-1, p. 5 (citing O.C.G.A. § 12-3-234(a)-(b)). However, Plaintiffs overlook that this version of the statute was not enacted until May 30, 2007. See O.C.G.A. § 12-3-234 (2007) (amended 2013). At the time that the Eleventh Circuit decided Fouche in 1983, the version that was then in place simply directed the Park Authority to submit its financial books to the State auditor each year for inspection—much like

the statute applicable to SIHA in this case. See id. § 12-3-234 (1950) (amended 1995, 2007, 2013).

Plaintiffs also seek to distinguish this case from Fouche on the basis that State law expressly prescribes the uses of the Park Authority's income. Dkt. No. 92-1, p. 5 (citing O.C.G.A. § 12-3-271 (stating that gifts and grants must be used to beautify and manage the land for the benefit of the people)). While there is no similar "use of income" provision relating to SIHA under Georgia law, the statutes governing SIHA effectively limit its use of funds in a similar manner. Georgia law requires that SIHA operate in all respects for the public purpose of preserving the culture of Sapelo Island. O.C.G.A. § 12-3-441(b). Additionally, the relevant statutes explicitly state that SIHA's powers and duties are confined to only those listed therein, and include, in pertinent part, activities such as accepting donations or gifts, acquiring or disposing of property, procuring insurance, and adopting bylaws. Id. § 12-3-445. Implicit in these statutes is that SIHA's exercise of these powers and duties must be in furtherance of its designated public purpose, such that SIHA is, in fact, limited in the use of its funds in a manner comparable to the Park Authority in Fouche.

## III. Designation of SIHA Property as "Public Property"

Plaintiffs next assert that the Court erred, with regard to the second and fourth <u>Manders</u> factors respectively, in concluding that the State has substantial control over SIHA and would be responsible for paying a judgment assessed against it, based on the fact that SIHA-owned property is deemed "public property." Dkt. No. 92-1, pp. 5-7.

Georgia law provides that SIHA may acquire, hold, and dispose of real and personal property in its own name. O.C.G.A. § 12-3-445(2). It further states that "the said real and personal property shall become public property and shall be entitled to all the rights, privileges, and protection afforded like situated state owned or claimed property." <u>Id.</u>

While Plaintiffs cite statutory authority for the proposition that "public property" is not limited to State-held property under Georgia law, dkt. no. 92-1, p. 6 (citing O.C.G.A. § 50-16-180), that argument is unpersuasive in SIHA's case. SIHA's statutory scheme specifically contemplates that SIHA's real property be included in the definition of "real property" in O.C.G.A. § 50-16-120 ("Section 50-16-120"), but excluded from the realm of "real property" discussed in O.C.G.A. § 50-16-122 ("Section 50-16-122"). O.C.G.A. § 12-3-446.[1] Section 50-16-120

---

[1] The statute specifically refers to paragraph (1) of Section 50-16-120 and paragraph (1) of subsection (a) of Section 50-16-122.

12

relates to real property that is to be included within the State government's inventory of public property, and defines "real property" as that "owned by the [S]tate and under the jurisdiction of any state entity." Id. § 50-16-120(2). By contrast, Section 50-16-122 sets forth several requirements for the acquisition and disposition of public property, but applies only to "real property" that is "owned by the [S]tate and under the custody of any state entity."[2] As such, SIHA's real property is included in the State government's inventory of public property, though under the jurisdiction of the authority, but is not subject to certain transfer requirements applicable to other State-owned property. It thus appears that, in designating SIHA's real property as "public property," the relevant statute refers not simply to property held by a public authority but

---

O.C.G.A. § 12-3-446. However, because these statutes have been amended since SIHA's statutory scheme was enacted in 1983, the cross-references no longer match the paragraphs or subsections in these statutes containing the definitions of "real property." See id. § 50-16-120 (1970) (amended 2005); id. § 50-16-122 (1982) (amended 1985, 1986, 1990, 1994, 2005). The definitions now appear, substantially unchanged, in paragraph (2) of Section 50-16-120 and subsection (a) of Section 50-16-122.

[2] Notably, the earlier version of this statute, in place at the time of the SIHA statutes' enactment, expressly listed several State authorities, including the Park Authority in Fouche, whose real property was exempted from the definition of "real property" subject to the acquisition and disposition requirements set forth therein. Id. § 50-16-122(a)(1) (1982) (amended 1985, 1986, 1990, 1994, 2005).

AO 72A
(Rev. 8/82)

rather to property in which the State has at least some ownership interest. See id. § 12-3-445(2).[3]

Equally unavailing is Plaintiffs' contention that SIHA's authority to acquire, hold, and dispose of property in its own name precludes the State from having any control over it or being responsible for any adverse judgment. See Dkt. No. 92-1, p. 6 (citing O.C.G.A. § 12-3-445(2)). Although SIHA need not seek the State's approval to acquire or dispose of property, the State nevertheless retains control over these transactions by stating that they must be for the purpose of preservation, O.C.G.A. § 12-3-441(b), and that their financial recording ultimately must be reviewed by the State auditor, id. § 12-3-448. Additionally, for these reasons and those cited in the Court's previous Order—namely, that SIHA's members are comprised largely of State officials, id. § 12-3-444(a); that its property is "public property" entitled to the protections of State-owned property, id. § 12-3-445(2); and that Georgia's Attorney General must represent SIHA in any legal proceedings, id. § 12-3-450—it

---

[3] The statutory provisions regarding the State's and SIHA's respective eminent domain powers do not change this result. See id. § 12-3-445(2) ("The authority may not acquire real or personal property by condemnation, eminent domain, but any real or personal property owned or claimed by the authority may be condemned, through the exercise of the power of eminent domain, by the State of Georgia, acting by and through its State Properties Commission."). These provisions are consistent with the State having an interest in property held by SIHA.

appears that the State would be responsible for paying any adverse judgment assessed against the authority.

**IV. Compensation of SIHA's Members**

Finally, Plaintiffs argue that the Court erred in its assessment of SIHA's source of funding under the third <u>Manders</u> factor, by concluding that because State law prescribes the amount of compensation to be paid to SIHA's members who are not State officials, it necessarily contemplates the State paying that compensation. Dkt. No. 92-1, pp. 7-8 (citing O.C.G.A. § 12-3-444(c)).

Georgia law establishes SIHA as an authority comprised of five members: the Governor; the Commissioner of the DNR; the Executive Director of the State Properties Commission; a resident of Sapelo Island appointed by the Governor; and the Commissioner of Human Relations in the Governor's office, unless such position is vacant, in which case a second Sapelo Island resident must be appointed by the Governor to fill this seat. O.C.G.A. § 12-3-444(a). The statute sets the members' compensation as follows:

> The members of the authority who are officers of the state shall not be entitled to any additional compensation for the rendering of their services to the authority. The members of the authority who are not public officers shall be entitled to reimbursement for their actual travel expenses necessarily incurred in the performance of their duties and, for each day actually spent in performance of their duties, shall

AO 72A
(Rev. 8/82)

receive the same per diem as do members of the General Assembly.

Id. § 12-3-444(c).

Plaintiffs fail to identify any basis for the Court to reconsider its prior discussion of the SIHA members' compensation. Relevant here is that the majority of SIHA's members—meaning four, but in some instances three, out of its five members—are existing State officers whose salaries paid by the State are intended to compensate, among other things, their work performed with respect to SIHA. See id. § 12-3-444(a), (c). As to the one, possibly two, members who are not State officials, State law directs how much these members are to be paid for their services. Id. That these members are compensated according to State law—regardless of whose pocket the funds actually come from—demonstrates State involvement sufficient to tilt the third factor in favor of immunity. See Pellitteri v. Prine, 776 F.3d 777, 782-83 (11th Cir. 2015) (finding that the third factor weighed in favor of immunity for a county sheriff, because, although the sheriff's office and salary were funded by the county, the county provided such funding according to State law requiring it to do so).[4]

---

[4] Contrary to Plaintiffs' suggestion, dkt. no. 92-1, p. 7, this result is not changed by the fact that no State statute expressly allows SIHA's members to be members of the State's retirement system. While perhaps retirement benefits were offered to the members of the Park Authority in Fouche, 713 F.2d at 1520, the unavailability of such benefits for the few SIHA members who are not State officials does not

AO 72A
(Rev. 8/82)

Thus, Plaintiff fails to present any clear error of law that would warrant the Court reconsidering and modifying any portion of its prior Order at this time.

**CONCLUSION**

For the reasons stated herein, Plaintiffs' Motion for Reconsideration (dkt. no. 92) is **DENIED**. The Court's Order dismissing Plaintiffs' claims against SIHA on immunity grounds (dkt. no. 89) remains the ruling of the Court.

**SO ORDERED**, this 20TH day of July, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

negate the significant State involvement in otherwise compensating these individuals.

AO 72A
(Rev. 8/82)