IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| SARAH FRANCES DRAYTON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MCINTOSH COUNTY, GEORGIA, by and through its Board of Commissioners, *et al.*, <br><br> Defendants. | Civ. No. 2:16-CV-00053-RSB-BWC |

### PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs hereby oppose Defendant McIntosh County's ("County") Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 211). In July 2018, Plaintiffs moved for leave to file a Second Amended Complaint that, among other things, corrected certain deficiencies the Court identified in Plaintiffs' prior pleading and removed parties and causes of action. Dkt. 173. The County opposed Plaintiffs' Motion. Dkt. 177. After considering the parties' briefing, the Court rejected the County's arguments and granted Plaintiffs' Motion. Dkt. 198.

Despite the Court's ruling, the County again seeks to deny Plaintiffs the opportunity to litigate the claims the Court has already determined may appropriately proceed.

First, the County (again) asks the Court to dismiss Plaintiffs' Title VI claims, but it offers no support for its assertion that Plaintiffs have not adequately pled such claims in their Second Amended Complaint. To the contrary, Plaintiffs' Second Amended Complaint corrects the deficiencies the Court discussed in its Order on Defendants' Motion to Dismiss (Dkt. 158). Plaintiffs' Second Amended Complaint now contains allegations establishing that all decisions concerning applications for and disbursement of federal financial assistance in McIntosh County

1

are made by the McIntosh County Board of Commissioners, as necessary for a viable Title VI claim. Second, Defendants contend that Plaintiffs' Second Amended Complaint includes claims that the Court previously dismissed pursuant to the Tax Injunction Act, but that is not true. None of Plaintiffs' claims or causes of action implicates the Tax Injunction Act, and to the extent that tax-related allegations remain in the Complaint, they appropriately describe additional evidence of discriminatory motive or involve relief that is outside the scope of the Tax Injunction Act. Finally, the County attempts to re-raise and re-assert its prior arguments to dismiss all of Plaintiffs' claims, but provides no reason why the Court should reconsider any of its prior rulings. The County's Motion should thus be denied in its entirety.

## I. LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint. *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1037 (11th Cir. 2008). Its review is "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). The court may not consider the merits of the case: a Rule 12(b)(6) motion must be denied if the "factual allegations, when assumed to be true, [are] enough to raise a right to relief above the speculative level." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

## II. ARGUMENT

### A. Plaintiffs Have Stated a Viable Claim Under Title VI

Failing to raise any issue regarding Plaintiffs' Title VI claim in its Opposition to Plaintiffs' Motion to Amend (Dkt. 177)[1] and in its Objection to the Magistrate Judge's Order Granting Leave to Amend (Dkt. 204), the County now seeks dismissal of this claim through a

---

[1] The Court noted the County's failure to dispute Plaintiffs' Title VI claim in its Order granting Plaintiffs' Motion to Amend. Dkt. 198, at 12 n. 7.

novel interpretation of Title VI. Existing authority clearly establishes that Plaintiffs have properly alleged a claim against the County, by and through its Board of Commissioners, ("Board of Commissioners") under Title VI. 42 U.S.C. § 2000d (prohibiting discrimination on the basis of "race, color, or national origin . . . under any program or activity receiving Federal financial assistance.").

A prima facie case of discrimination under Title VI may be established by showing "(1) that the defendant is receiving federal funds, (2) that the plaintiff was discriminated against, and (3) the plaintiff's race, color, or national origin was the motive for the discriminatory conduct." *Scarlett v. Sch. of the Ozarks, Inc.*, 780 F. Supp. 2d 924, 933–934 (W.D. Mo. 2011) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)); *see also Thompson v. Bd. of the Special Sch. Dist. No. 1*, 144 F.3d 574, 581 (8th Cir. 1998) ("To establish the elements of a prima facie case under Title VI, a complaining party must demonstrate that his/her race, color, or national origin was the motive for the discriminatory conduct."); *Jackson v. Conway*, 476 F. Supp. 896, 903 (E.D. Mo. 1979) (articulating a two-prong Title VI prima facie case: entity is engaged in discrimination and entity receives federal funds).

Here, Plaintiffs have alleged that the Board of Commissioners has received federal funds. Second Amended Complaint ("SAC") ¶¶ 342-356 (setting forth allegations regarding the federal Community Development Block Grant ("CDBG"), U.S. Department of Agriculture ("USDA"), and U.S. Department of Transportation ("USDOT") funds received by the Board of Commissioners). The allegations of discrimination against the Board of Commissioners, on the basis of Plaintiffs' race, color, and/or national origin, appear throughout all sections of the SAC.

Plaintiffs' Motion for Leave to Amend did not seek reconsideration of any prior rulings of the Court regarding Plaintiffs' Title VI claims.  Rather, Plaintiffs sought leave to include

additional allegations to respond to and correct certain deficiencies the Court found in Plaintiffs' prior pleading. Namely, in their First Amended Complaint (Dkt. 29), Plaintiffs brought their Title VI claim against the County. In ruling on the County's Motion to Dismiss Plaintiffs' Title VI claims, the Court determined that the phrase "program or activity" in Title VI did "not encompass the State or the County as a whole," even if any agencies or subdivisions of these entities did receive federal financial assistance. Dkt. 158, at 32.  Based on the Court's ruling, Plaintiffs sought leave to amend their pleadings to make clear that Plaintiffs' Title VI claims against the County are brought through the County's Board of Commissioners, as well as to include allegations showing that, apart from the Board of Commissioners, there is no other entity, department, or agency within the County government that controls the submission of applications for, receipt of, or disbursement of federal financial assistance. SAC ¶¶ 342-343. Further, Plaintiffs' Second Amended Complaint includes allegations that all such decisions concerning applications for and disbursement of federal financial assistance are made by the Board of Commissioners, and that the Board of Commissioners discriminated against Plaintiffs, including in its disbursement of such funds.  Thus, Plaintiffs have alleged that the relevant entity within the County government for the purposes of Title VI is the Board of Commissioners.

With these additional clarifications and allegations, Plaintiffs' Title VI claims are viable. Relevant authority makes clear that a "program or activity" for purposes of Title VI includes an entity or instrumentality of a local government that receives federal financial assistance. In fact, the Civil Rights Restoration Act of 1987, 20 U.S.C. § 1687, was amended with the purpose of broadening the coverage of Title VI, as well as other laws prohibiting discrimination by such entities receiving federal financial assistance. *See, e.g., Lussier v. Dugger*, 904 F.2d 661, 665 (11th Cir. 1990). The amended Restoration Act defines "program or activity" as:

> [A]ll of the operations of—(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . .

29 U.S.C. § 794(b)(1).

Courts have routinely found that county boards of commissioners, and similar entities within local governments, qualify as "programs or activities" for purposes of Title VI. For example, in *Bentley v. Cleveland County Board of County Commissioners*, the Tenth Circuit expressly rejected an argument from the defendant that its county board of commissioners was not a "program or activity" in a Title VI action because Congress did not intend entire county governments to be such. 41 F.3d 600, 603 (10th Cir. 1994). In ruling against the defendant, the Tenth Circuit distinguished between a circumstance in which an entire city government risks losing federal funding because of the discriminatory activity of "two little crannies . . . of one city agency", and the circumstance where it is alleged that the "the Board of County Commissioners [is] *the very part[y]*" that engaged in the discrimination at issue. *Id*. at 603 (quoting *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir.1991) (emphasis added)). In the latter scenario, which is alleged in Plaintiffs' Second Amended Complaint, the Tenth Circuit ruled that the board of county commissioners is clearly a program or activity. *Bentley*, 41 F.3d at 603. As in *Bentley*, it is alleged here that there are no "little crannies" responsible for the distribution of funding and discrimination at issue. Rather, Plaintiffs allege that "the Board of County Commissioners [is] the very part[y]" that discriminated against Plaintiffs. *Id.* at 603.

In *American Association of People With Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1293 (M.D. Fla. 2002), the court similarly concluded that because it was alleged that city council members were an entity of a local government receiving federal financial assistance, the plaintiff

sufficiently alleged that the city council members were a program or activity. Numerous other courts have reached the same decision. *See also, e.g.*, *Pathways Psychological Support Ctr. v. Town of Leonardtown*, No. CIV.A. DKC 99-1362, 1999 WL 1068488, at *3 (D. Md. July 30, 1999) (town officials are programs or activities); *Innovative Health Sys., Inc. v. City of White Plains*, 931 F. Supp. 222, 234 (S.D.N.Y. 1996), *aff'd in part*, 117 F.3d 37 (2d Cir. 1997) (city planning board and zoning board are programs or activities).

Plaintiffs laid out the bases for the proposed amendments concerning their Title VI claims relevant to the County in their Motion for Leave to Amend (Dkt. 173, at 5-8), the County opposed the Motion by adopting arguments made by the State Defendants (Dkt. 177, at 1-2), and the Court subsequently ruled that Plaintiffs' Title VI claims can proceed as amended (Dkt. 198, at 12-17). Now, the County seeks to have the Court reconsider that decision, but cites to no relevant legal authority whatsoever to support its claim that its Board of Commissioners is not a program or activity or that Plaintiffs' Title VI claims are not viable. Indeed, the sole case cited by the County regarding this issue does not include any discussion relevant to Title VI doctrine, nor the definition of "program or activity," rather the County cites to language concerning circumstances in which government officials are named in their official capacities in addition to the governmental entity itself. *See SP Frederica, LLC v. Glynn Cty.*, 173 F. Supp. 3d 1362, 1370-71 (S.D. Ga. 2016); Dkt. 211, at 4. This authority does not remotely support the County's contention that Plaintiffs have somehow failed to cure deficiencies with respect to their Title VI or otherwise require the Court to amend or alter its prior Order allowing Plaintiffs' claims to proceed.

Indeed, the County's novel interpretation of Title VI, lacking support in relevant authority, represents a drastic shift in the applicable doctrine with far-reaching consequences.

Under the County's interpretation, local government entities distributing funding directly (instead of through subdivisions) and directly engaging in discrimination would be immune from Title VI liability. In other words, all a local government would have to do to avoid Title VI liability would be to distribute funds through its board of commissioners, instead of through smaller agencies. Such an interpretation would stand in sharp contrast to the text of Title VI, as well as the recognized intent of Congress in amending Title VI to expand its protections. It cannot be that an entity of local government which receives and distributes federal funding, and engages in discrimination, escapes the possibility of liability simply due to the way in which it has chosen to structure itself.

Consequently, Plaintiffs have sufficiently alleged that the Board of Commissioners is a program or activity, and have stated a valid claim under Title VI. Plaintiffs' claims should be permitted to proceed to enable them to develop the record necessary to prove their allegations.

### B. Plaintiffs' Second Amended Complaint Does Not Assert Any Claims That Implicate the Tax Injunction Act

The County erroneously contends that Plaintiffs' Second Amended Complaint reasserts previously dismissed and unspecified "valuation-based claims" concerning Plaintiffs' tax assessments. Notably, the County does not identify what causes of action or parties it seeks to have dismissed from this suit, and ultimately acknowledges that it is merely requesting clarification of the scope of the Court's prior Order dismissing the Board of Tax Assessors as a defendant in this action (Dkt. 158). No such clarification is necessary. The Court has dismissed the Board of Tax Assessors pursuant to the Tax Injunction Act, and Plaintiffs' Second Amended Complaint does not seek any relief barred by the Tax Injunction Act.

The Tax Injunction Act precludes federal courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy, or collection of any tax under State law where a plain, speedy,

7

and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. As the Supreme Court has recognized, the Tax Injunction Act bars federal jurisdiction over claims that would "reduce the flow of state tax revenue." *Hibbs v. Winn*, 542 U.S. 88, 106 (2004). Plaintiffs' Second Amended Complaint does not seek any relief that would affect the assessment or levy of any tax. Plaintiffs do not ask the Court to make any rulings concerning the Board of Tax Assessors' method of taxation or seek to enjoin the County in any way with respect to its assessment and collection of taxes on Sapelo Island. In other words, Plaintiffs' claims do not implicate the Tax Injunction Act.

The County's complaints about references in Plaintiffs' Second Amended Complaint to property taxes assessed on Sapelo Island are equally misplaced. Plaintiffs' Second Amended Complaint contains a host of information and allegations related to discriminatory actions taken by the County against African-American residents of Sapelo Island in support of their discrimination claims. Such evidence of other specific instances of discrimination—even beyond those which are actionable—is relevant to establishing a defendant's discriminatory intent. *See, e.g., Allen v. County of Montgomery, Alabama*, 788 F.2d 1485, 1488 (11th Cir. 1986) ("[E]vidence of [prior discrimination] was relevant and probative . . . . The inherent difficulty of proving discrimination often necessitates the use of circumstantial evidence as the method of proof."); *Badilo v. City of Deerfield Beach*, No. 13-60057-CIV, 2013 WL 3762338, at *2 (S.D. Fla. July 16, 2013) (allegations in a complaint against municipality that are "not actionable themselves, may nonetheless be probative of . . . current claim"); *Wyatt v. Sec. Inn Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir. 1987) ("Courts have frequently recognized that evidence of prior discriminatory acts is often crucial in proving that the defendants' current practices, viewed in a longer time frame, reveal discriminatory motivation."); *see also Holland*

*v. Sebelius*, No. 1:13-CV-609-TWT-LTW, 2015 WL 13691436, at *3 (N.D. Ga. May 12, 2015), *report and recommendation adopted*, No. 1:13-CV-609-LMM-LTW, 2015 WL 13691883 (N.D. Ga. June 4, 2015) (finding that "it is not appropriate to strike . . . [factual allegations regarding dismissed claims that] could help establish a circumstantial case of discrimination or otherwise shed light on the decisionmaker's motivations with respect to Plaintiff's remaining discrimination claims.").

In addition, Plaintiffs properly retain factual allegations regarding discriminatory actions, that may be the basis of discrimination claims in federal court, and that may also relate to tax-related issues, but do not involve enjoining, suspending, or restraining the assessment or levy of any tax. For example, paragraphs 332-334 of the Second Amended Complaint describe the County Commissioners' discriminatory deviation from standard procedure when one County Commissioner introduced a proposed ordinance that would have established a preferential tax assessment procedure for Hog Hummock as a historic district. The relief Plaintiffs seek in regard to those allegations would be a proper consideration of the ordinance, which does not implicate the Tax Injunction Act in any way. Plaintiffs do not seek the relief of imposition of the ordinance, which may implicate the Tax Injunction Act. Similarly, Plaintiffs compare the assessments of Sapelo Island parcels and the services the Island receives. *See, e.g.,* SAC at ¶ 331 ("While the property tax appraisals stood at exceedingly, and unjustifiably, high levels, Sapelo Island residents and property owners, including Plaintiffs, were receiving virtually no County services on the Island."). Again, while the allegations make reference to taxes and assessments, they do not implicate the Tax Injunction Act because the relief sought is the provision of services commensurate to the level of taxation. The Court may not have jurisdiction to compel the County to collect taxes from Sapelo Island in a manner commensurate with the assessments on the

predominantly white mainland, but it does have jurisdiction to compel the County to provide services on Sapelo Island in a manner commensurate with the services provided on the predominantly white mainland, particularly where the taxation of Sapelo Island parcels is greater that the taxation of mainland parcels.

Accordingly, it is appropriate for Plaintiffs to retain in their Second Amended Complaint allegations that support the claims of discrimination this Court has permitted to go forward, including claims that may indirectly relate to taxation, but do not involve forms of relief prohibited in federal court under the Tax Injunction Act.

### C. The Court Need Not Revisit the County's Prior Motion to Dismiss

Finally, the County attempts to "incorporate[] and re-assert[] the portions of its prior Motion to Dismiss" that the Court denied in its Order of October 30, 2017 (Dkt. 158) for the sole purpose of preserving those defenses. Dkt. 211, at 6. As the County acknowledges, the Court has already denied the County's attempts to dismiss these claims. Thus, the Court need not revive, nor revisit, the County's prior Motion to Dismiss here. *See, e.g., Wilf v. Bd. of Regents of the Univ. Sys. of Georgia*, No. 1:09-CV-1877-RLV, 2010 WL 11469573, at *1 (N.D. Ga. July 6, 2010) ("Because the court has already rejected the defendants' arguments . . . the court finds no need to revisit the defendants' arguments in this order.").

### III. CONCLUSION

The County offers no reason why the Court should revisit its prior rulings or again consider whether the claims in Plaintiffs' Second Amended Complaint should go forward. As this Court has already concluded, Plaintiffs' Second Amended Complaint states viable claims against the County. Thus the Court should deny the County's Motion and allow the parties to litigate the claims at issue without further delay.

Dated: April 24, 2019

Respectfully submitted,

<div style="display:flex">
<div>

/s/ Reed N. Colfax
Reed N. Colfax (admitted *pro hac vice)*
Jia M. Cobb (admitted *pro hac vice*)
Angela A. Groves (admitted *pro hac vice*)
RELMAN, DANE & COLFAX PLLC
1225 19th St., NW, Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
rcolfax@relmanlaw.com
jcobb@relmanlaw.com
agroves@relmanlaw.com

</div>
<div>

Robert Jackson (GA Bar #387750)
ROBERT B. JACKSON, IV, LLC
260 Peachtree Street, Suite 2200
Atlanta, Georgia 30303
Tel: 404-313-2039
rbj4law@gmail.com

</div>
</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April, 2019 a copy of the Plaintiffs' Opposition to Defendant County's Motion to Dismiss Plaintiffs' Second Amended Complaint was filed on the CM/ECF system for the Southern District of Georgia, which will send notification of such filing to the following:

Richard K. Strickland
Bradley J. Watkins
Emily Rose Hancock
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue, Post Office Box 220
Brunswick, GA 31521-0220
Tel: (912) 264-8544
Fax: (912) 264-9667
rstrickland@brbcsw.com
bwatkins@brbcsw.com
ehancock@brbcsw.com

*Attorneys for Defendant McIntosh County*

Julie Adams Jacobs, Senior Assistant Attorney General
Brian Edward Goldberg
Alkesh Patel
Brittany Bolton
OFFICE OF THE ATTORNEY GENERAL
40 Capitol Square, SW
Atlanta, GA 30334-1300
Tel: (404) 463-5989
Fax: (404) 657-3239
jjacobs@law.ga.gov
bgoldberg@law.ga.gov
apatel@law.ga.gov
bbolton@law.ga.gov

Patrick O'Connor
Patricia T. Paul
OLIVER MANER LLP
218 West State Street
Savannah, GA 31401
Tel: (912) 236-3311
pto@olivermaner.com

ppaul@olivermaner.com

*Attorneys for Defendants State of Georgia, Governor Brian Kemp, Georgia Department of Natural Resources, Georgia Department of Community Affairs, and Commissioner Mark Williams*

Anna Baldwin
U.S. DEPARTMENT OF JUSTICE – CIVIL RIGHTS DIVISION
905 Pennsylvania Ave., NW
Washington, DC 20036
Tel: (202) 305-4278
anna.baldwin@usdoj.gov

Shannon Heath Statkus
Tara M. Lyons
U.S. ATTORNEY'S OFFICE
PO Box 2017
600 James Brown Blvd., Suite 200
Augusta, GA 30901
Tel: (706) 724-0517
shannon.statkus@usdoj.gov
tara.lyons@usdoj.gov

*Counsel for Intervenor United States*

                                                  /s/ Reed N. Colfax
                                                  Reed N. Colfax
                                                  *Attorney for Plaintiffs*