FILED
John E. Triplett, Acting Clerk
United States District Court

By CAsbell at 4:22 pm, Nov 23, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MELVIN BANKS, SR., et al.,<br><br>Plaintiff,<br><br>v.<br><br>MCINTOSH COUNTY, et al.,<br><br>Defendants. | CIVIL ACTION NO.: 2:16-cv-53 |

**O R D E R**

This matter is before the Court on Defendant McIntosh County's Motion to Exclude the expert testimony of Dr. William Fales. Doc. 273. Plaintiffs filed a Response to Defendant's Motion, and Defendant filed a Reply. Docs. 339, 347. For the following reasons, I **DENY** Defendant's Motion to Exclude.

**BACKGROUND**

This case arises out of a dispute between the residents of Sapelo Island (and others with connections to the Island) and Defendants. Doc. 29. Plaintiffs allege Defendant McIntosh County discriminates against them by providing inadequate services, including emergency medical services ("EMS"). Id. at 79. In support of their claims regarding EMS, Plaintiffs intend to rely on the testimony of an expert witness, Dr. Williams Fales. Doc. 273. Dr. Fales provided a 50-page report (the "Report") discussing effective EMS systems generally and the McIntosh County and Sapelo Island EMS systems specifically. Docs. 273-1, 339-1.

Defendant McIntosh County filed a Motion to Exclude Dr. Fales' testimony, arguing his expert opinions are inadmissible because the conclusions are not sufficiently reliable and the testimony is not helpful under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S 579

(1993), and Federal Rule of Evidence 702. Doc. 273 at 5, 9. Defendant, however, does not at this time raise any challenge to Dr. Fales' qualifications under Daubert.

## DISCUSSION

### I. Legal Standard

The United States Supreme Court's holding in Daubert and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony. Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). In this Circuit, courts routinely look to three elements to determine if an expert is qualified under Daubert and Rule 702. As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted). "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). The trial court has broad latitude in evaluating each of these three factors. As to qualifications, an expert may be qualified "by knowledge, skill, training, or education." Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193 (11th Cir. 2010). The expert need not have experience precisely mirroring the case at bar in order to be qualified. Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001). However, where an expert does have

experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony. Frazier, 387 F.3d at 1261. As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Daubert, 509 U.S. at 593–94. However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis." Quiet Tech., 326 F.3d at 1341. At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate." Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted). Finally, as to the third Daubert factor, expert testimony is likely to assist the trier of fact to the extent "it concerns matters beyond the understanding of the average lay person and logically advances a material aspect of the proponent's case." Kennedy v. Elec. Ins. Co., Case No. 4:18cv148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert, 509 U.S. at 591).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence." Quiet Tech., 326 F.3d at 1341. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

**II.     Dr. William Fales**

Plaintiffs retained Dr. Fales as an expert witness in emergency medicine and hired him to opine on effective EMS systems and disparities between EMS services available on Sapelo Island and mainland McIntosh County.  Doc. 339 at 1.  Dr. Fales is currently a professor in the Department of Emergency Medicine at Western Michigan University Homer Stryker M.D. School of Medicine and has over 40 years of experience in EMS.  Doc. 339-1 at 53–54.  Along with teaching, Dr. Fales has served as the EMS Medical Director for Kalamazoo County Medical Control Authority, State Medical Director for the Michigan Department of Health and Human Services Bureau of EMS, Trauma and Preparedness, he has written extensively on emergency medicine and EMS systems, and he has previously testified as an expert.  Id. at 52–68.[1]

Dr. Fales' Report includes an assessment of the Island's available EMS, as well Dr. Fales' recommendations for improvement.  Doc. 273-1 at 9.  Dr. Fales reached his conclusions by reviewing various records but did not visit Sapelo Island or McIntosh County.  Doc. 273-2 at 9–14.  Dr. Fales' Report contains five sections.  Section 1 consists of an executive summary of the Report.  Doc. 273-1 at 7.  Section 2 describes the systems approach to emergency medical services and general elements of an effective EMS system.  Id. at 8–17.  Section 3 provides a history of past and current emergency medical services on both Sapelo Island and in the county generally.  Id. at 18–35.  In Section 4, Dr. Fales make recommendations for improvements to EMS at both the County and Island level, and Section 5 summarizes these recommendations.  Id. at 36–51.

Defendant characterizes Dr. Fales' Report as only offering recommendations to the County as how to better serve Sapelo Island, rather than providing any opinion on deficiencies in

---

[1]     Defendant does not challenge, and the Court makes no finding, as to whether Dr. Fales is qualified as an expert.  Rather, this background is provided as context for Dr. Fales's opinions.

4

the Sapelo Island EMS services.  Doc. 273 at 1.  As noted above, in Sections 4 and 5, Dr. Fales offers 26 recommendations to improve EMS both on Sapelo Island, some of which involve improvements to McIntosh County's EMS generally (i.e., recommendations for improving McIntosh County's EMS throughout the county, not just on Sapelo Island).  Doc. 273-1 at 35–47.  Additionally, the Report contains Sections on effective EMS systems generally and a description of the EMS, past and current, on Sapelo Island and in McIntosh County.  Id. at 17–34.  Defendant does not appear to challenge these Sections.

### A.     Reliability Requirement

Defendant first challenges the reliability of Dr. Fales' methodology.  Doc. 273 at 5.  Specifically, Defendant challenges Dr. Fales' practice of reviewing county documents, depositions, and interviewing individuals but not conducting an in-person visit to McIntosh County or Sapelo Island to observe their EMS system in action.  Id.  Additionally, Defendant contends Dr. Fales offers no explanation of how he reached his recommendations beyond applying his experience to the information provided to him.  Id.  Finally, Defendant argues Dr. Fales' testimony is not reliable because Dr. Fales does not offer an opinion on whether the current EMS system on Sapelo Island meets any objective standards.  Id. at 5, 6.  Plaintiffs, on the other hand, assert Dr. Fales' opinions are adequately based on his experience in the field, and, therefore, are sufficiently reliable.  Id.

#### 1.     *Dr. Fales' opinions "non-scientific."*

As a threshold matter, Plaintiffs and Defendant disagree on whether Dr. Fales' opinions are scientific or non-scientific and argue the distinction is material to determining whether the methodology by which Dr. Fales reached his conclusions is sufficiently reliable.  While Daubert's reliability requirement applies equally to "scientific" and "non-scientific" testimony,

5

trial judges are given considerable flexibility in what factors to consider when determining whether expert testimony is reliable. Frazier, 387 F.3d at 1262. When testimony is based on a social science, "professional study or personal experience" is a proper base for expert testimony. Maiz, 253 F.3d at 669; 325 Goodrich Ave., LLC v. Sw. Water Co., 891 F. Supp. 2d 1364, 1378 (M.D. Ga. 2012) (explaining the Daubert factors of testability, error rate, peer review and publication, and general acceptance are "generally inapplicable" to "non-scientific" testimony); Bryant v. BGHA, Inc., 9 F. Supp. 3d 1374, 1386 (M.D. Ga. 2014) (explaining same). Thus, determining whether Dr. Fales' testimony is scientific or non-scientific is important because if it is non-scientific, it may still be reliable, so long as he demonstrates why his experience is sufficient and how he applied his experience in forming his opinion. Frazier, 387 F.3d at 1261 (citation omitted). Nonetheless, the distinction is not determinative, because ultimately the Court still has considerable flexibility in assessing reliability, regardless of whether it is scientific or non-scientific. Kumho Tire, 526 U.S. 137, 150; Frazier, 387 F.3d at 1262. The Court now turns to whether Dr. Fales' testimony is scientific or non-scientific.

Defendant argues Dr. Fales' opinions are not testable, and he has not offered any error rate, has not shown any evidence that his opinions have been peer-reviewed, and has not shown the general acceptance of his opinions, and, therefore, are not sufficiently reliable. Doc. 273 at 5. Plaintiffs argue Dr. Fales' testimony is non-scientific and factors such as "error rate" and testability are inappropriate to address such testimony. Doc. 339 at 5–6 (citing Kumho, 526 U.S. at 137). Defendant responds that "medicine is not a social science" and, therefore, Dr. Fales' opinions must meet one of the non-exclusive reliability factors identified in Daubert—his opinions must be testable, have an error rate, be based on peer reviewed materials, or be generally accepted. Id. at 1–2. That is, Defendant argues experiential-based testimony is never

sufficient in the area of EMS systems because it is a "hard science," rather than a "social science."

Defendant would be correct about Dr. Fales' testimony if he were testifying about specific medical treatment or diagnoses. See, e.g., Hendrix, 609 F.3d at 1194–95 (applying the factors described by in Daubert to an expert's application of differential etiology); Berger v. Philip Morris USA Inc., Case No. 3:09-cv-14157, 2014 WL 10715266 (M.D. Fl. Aug. 29, 2014) (treating medical prognosis as a hard science). But Dr. Fales' testimony concerns systems for the allocation, prioritization, and provision of healthcare services and management of such systems, not specific medical treatment or diagnoses. In other words, Dr. Fales' opinions concern how and when various healthcare assets are deployed and utilized on a system-wide basis, not the adequacy of specific forms of medical care or treatment. Dr. Fales' recommendations highlight this distinction. For example, Dr. Fales recommends Sapelo Island First Responders should have a dedicated vehicle (Recommendation B7) and the fireboat used by McIntosh County EMS should be moved from one location to another (Recommendation C3). Doc. 273-1 at 50. These recommendations do not concern specific medical treatment or diagnoses, but, instead, concern acquisition, deployment, and management of certain healthcare assets. Testimony about the management and deployment of healthcare or medical services is often considered non-scientific testimony and is evaluated for reliability based on factors other than the non-exhaustive Daubert "scientific" factors. See Goines v. Lee Memorial Health Sys., Case No: 2:17-cv-656, 2019 WL 968397, at *3–4 (M.D. Fla. Feb. 28, 2019) (evaluating the reliability of expert testimony about hospital management based on the expert's experience and education); Demouchette v. Dart, No. 09 C 6016, 2012 WL 6568232, at *3–4 (N.D. Ill. Dec. 14, 2012 (considering physician testimony about correctional medicine services to be non-scientific);

Physicians Dialysis Ventures, Inc. v. Griffith, No. 06-3468, 2007 WL 3125197, at *7 (D. N.J. Oct. 24, 2007) (evaluating an expert's opinion relating to the management of a dialysis center as non-scientific testimony).

It makes sense to treat opinions on allocation, prioritization, and provision of healthcare services and management of such systems as non-scientific, or akin to a social science or soft science, given that such opinions concern the management and deployment of resources, not specific or individualized medical decisions. Indeed, management of resources and systems is frequently recognized as a social science. See, e.g., Long v. Murray Cnty. Sch. Dist. & Gina Linder, No. 4:10-cv-00015, 2012 WL 13071603, at *7 (N.D. Ga. Apr. 18, 2012) (discussing school policy and management as a social science rather than a hard science); Parton v. United Parcel Service, No. 1:02-cv-2008, 2005 WL 5974445 (N.D. Ga. Aug. 2, 2005) (describing human resources management as a soft science). A review of Dr. Fales' Report and deposition testimony demonstrates that his opinions concern allocation, prioritization, and provision of emergency medical services systems and management of such systems. Thus, because Dr. Fales' Report and testimony regarding EMS systems are more akin to a social science or soft science, the Court sees no need to only consider Daubert's non-exhaustive factors and will consider Dr. Fales' experience in determining whether the opinion is reliable.

### 2. *Dr. Fales' opinion is reliable.*

The primary basis for Dr. Fales' opinion is his experience in emergency medical services and EMS systems. When an expert opinion is based on experience, a court may decide such testimony is reliable based upon that expert's personal knowledge or experience. Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1338 (11th Cir. 2009); see also Kumho, 526 U.S. at 151. In order for the opinion to be deemed reliable under this rubric, Dr. Fales must "explain

8

<u>how</u> [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts." <u>Frazier</u>, 387 F.3d at 1261 (emphasis in original) (citation omitted). In other words, in order to admit Dr. Fales' opinion, he must be able to demonstrate a sufficient connection between his experience and the opinion he offers. Dr. Fales does so here.

Although Dr. Fales' Report does not expressly explain the connection between his opinions and his experience, the connection is apparent when considering his Report and deposition testimony as a whole. In Section 2, he explains the prevailing "systems approach" to emergency medical services with appropriate citations. Doc. 273-1 at 7–16. Thus, unlike the expert in <u>Haynes v. Transamerica Corp.</u>, Civil Action No. 16-cv-02934, 2018 WL 4360444, at *1 (D.C. Colo. 2018), which Defendant cites for support, who provided no background information, Dr. Fales provides a background on effective EMS systems. Doc. 273-1 at 7–16. In Section 3, Dr. Fales explains past and current emergency medical services on Sapelo Island and McIntosh County, with citation to documents he examined to develop these observations. <u>Id.</u> at 17–34. While Defendant objects to Dr. Fales' report because there is not "objective testimony about how any existing system works," doc. 347 at 3, in examining Dr. Fales' Report, it appears that is what Section 3 describes, doc. 273-1 at 17–34. For example, Dr. Fales describes how the existing 911 center serving Sapelo Island operates. <u>Id.</u> at 18. Similarly, the Report outlines the services McIntosh County Volunteer Fire Department provides. <u>Id.</u> at 19–22. Perhaps most pertinent, Dr. Fales provides an overview of how existing EMS serve McIntosh County and Sapelo Island specifically, including details, such as: the area MCEMS serves; how frequently McIntosh County EMS respond to incidents; analyzing the MCEMS budget; and a breakdown of MCEMS responses to incidents on Sapelo Island. <u>Id.</u> at 23–34. Thus, Section 3 in

Dr. Fales' Report contradicts Defendant's suggestion Dr. Fales' Report lacks objective testimony about existing systems. After laying this foundation, Dr. Fales suggest ways in which the EMS system could be improved to serve the residents of Sapelo Island in a way, like the way in which the mainland residents are served, in many respects. Id. at 35–47.

Dr. Fales states he bases his opinion on his more than 40 years of experience in EMS systems. Doc. 273-2 at 90. During Dr. Fales' deposition, he provides testimony about his experience in places with similar demographics to McIntosh County, as well as places reachable only by boat. Id. at 16–22 (describing his experience in other rural areas with demographics like McIntosh County). Dr. Fales also connects specific opinions, such as whether Sapelo Island has a sufficient population to support a dedicated EMS, to his experience. Id. at 24. Similarly, Dr. Fales explains he considers training firefighters in emergency medicine as a best practice, based on his experience with other rural communities, which relates directly to recommendation B-1 in his Report that recommends having first responders on the Island affiliated with the McIntosh County Volunteer Fire Department. Id. at 25; Doc. 273-1 at 37. When Dr. Fales was questioned about financial considerations at his deposition, he explained his opinion that McIntosh County could implement many of the recommendations was based on his knowledge of similar rural Michigan communities, connecting his experience to his recommendations. Id. at 39. Later in his deposition, Dr. Fales explains how he relied on operations information to form Recommendation D-1, which involves helicopter protocols. Id. at 77–78. Thus, considering Dr. Fales' Report and his deposition together, Dr. Fales adequately connects his experience with his conclusions.

Defendant also relies on Parton v. United Parcel Service, No. 1:02-cv-2008, 2005 WL 5974445 (N.D. Ga. Aug. 2, 2005), to demonstrate a circumstance where an expert's report

should be excluded because the expert did not explain how his experience led to the conclusions he reached, why his experience was a sufficient basis for his opinions, and how that experience was reliably applied. Doc. 273 at 7–8. Defendant's reliance on Parton is misplaced. Unlike the expert in Parton, Dr. Fales does more than look at the County's current policy. He describes standard EMS systems and provides a history of emergency medical services in the area. Id. (explaining the expert does not meet the reliability test when he provided information solely on the defendant's policies). Further, in Dr. Fales' deposition, he describes the materials he considered in forming his opinion, which include not only documents about the County's current EMS policies, but things like other witnesses' depositions, telephone interviews, and documents detailing the County's response to emergencies. Doc. 273-2 at 13–15. Considering Dr. Fales' entire Report and deposition testimony, Dr. Fales provides sufficient detail and factual support to demonstrate how he arrived at his conclusions and how those conclusions are connected to his experience. See Long, 2012 WL 13071603, at *7 (overruling the defendant's objection because the expert's experiences provided him with the requisite knowledge and experience to offer an opinion on the school's policies); see also Goodman v. Donald, No. CV699-012, 2009 WL 10703066 (S.D. Ga. Nov. 19, 2009) (permitting expert testimony about photographic evidence based on the expert's 40 years of experience).

In sum, Dr. Fales' Report demonstrates he adequately applied his professional experience and research on effective EMS systems to the facts of this case. See, e.g., Westervelt v. Parks Hotels & Resorts, Inc., No. 1:16-cv-03156, 2019 WL 2082708 (N.D. Ga. Mar. 1, 2019) (determining expert applied his years of experience in the glass industry to give an opinion on the presence or absence of glazing material on the window at the time in question). Section 4 of Dr. Fales' Report explains deficiencies in the EMS provided to Sapelo Island based on his

experience. See e.g., Doc. 273-1 at 25–26 (explaining how many transports are needed to sustain a dedicated paramedic unit based on his experience, supporting his opinion that dedicated EMS on Sapelo Island are not feasible). When an expert's report has demonstrated the connection between his experience and opinions, even if not precisely explained, the report is sufficiently reliable. Prescott v. CSX Transp., Inc., No. CV512-013, 2013 WL 1338430, *1–2 (S.D. Ga. Mar. 28, 2013) (finding an expert's opinion reliable when he reviewed evidence of the accident and applied his experience to the facts of the case); Godwin v. CSX Transp., Inc., No. CV513-134, 2015 WL 4940346, at *4 (S.D. Ga. Aug. 18, 2015) ("[A] review of [the expert's] reports reveal how his experience led him to his opinions.")).

### 3. *Defendant's Arguments Unrelated to Reliability.*

Defendant presents other arguments under the heading of reliability, but those arguments more accurately concern the weight, credibility, or relevance of Dr. Fales' opinions, not admissibility. For instance, Defendant states that because Dr. Fales formed his opinion by reviewing documents, rather than visiting McIntosh County or Sapelo Island, his results are not reliable. Doc. 273 at 5. This argument goes to whether Dr. Fales' testimony lacks credibility, not the reliability of his opinions. Viterbo v. Dow Chem. Co., 826 F.2d 420, 422 (5th Cir. 1987) ("Questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); Godwin, 2015 WL 4940346, at *4 (where expert sufficiently demonstrates connection between his experience and opinions and utilizes reliable practices, additional challenges to facts underlying opinion and expert's practices go to weight of expert opinion, not admissibility); 325 Goodrich Ave., 891 F. Supp. at 1382 (admitting an expert's conclusions

about compression damage to subfloor based on other indicia even though the expert never observed said damage to the subfloor itself).

Similarly, Defendant argues Dr. Fales' lack of experience providing recommendations or advice to other areas reachable only by boat, or of similar demographics as McIntosh County, makes his testimony unreliable. Doc. 347 at 3–4. This argument also goes to the credibility of the testimony, not its admissibility. Padgett v. Kmart Corp., No. CV 315-048, 2016 WL 3746671, at *4 (S.D. Ga. July 8, 2016) (quoting Trilink Saw Chain, LLC. v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) ("[I]f there are gaps in an expert witness's qualifications or knowledge, they generally go to the weight of the witness's testimony not its admissibility.")).

Defendant avers Dr. Fales' testimony is unreliable because it does not analyze the cost of the recommendations. Doc. 273 at 7. Where an expert has used an otherwise reliable methodology, the expert's failure to include some considerations goes to the probative value of an expert's opinion, not its admissibility. Indeed, "in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) (quoting Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002)); see also Purdee v. Pilot Travel Centers, LLC, No. CV407-028, 2010 WL 11537772, at *3 (S.D. Ga. Jan. 14, 2010) (citing Bazemore v. Friday, 478 U.S. 385, 400 (1986)).

Finally, Defendant argues Dr. Fales "made no effort to compare [Sapelo Island's] EMS services to objective standards regarding EMS care." Doc. 273 at 2, 5. In Dr. Fales' deposition, he admits he did not "make any attempt to try and measure the system performance based on any other standards that are out there." Doc. 273-2 at 47. Defendants essentially argue Plaintiffs must show Island EMS fell below some objective standard, and Dr. Fales' opinion does not

prove that to be the case.  Defendant's argument does not pertain to the reliability of Dr. Fales' methodology; instead, it attacks the relevance of Dr. Fales' opinion.  Indeed, whether Dr. Fales compared Island EMS to national standards has no bearing on test for reliability (i.e., whether he adequately formed his conclusions based on his knowledge and experience and reliably applied that knowledge and experience to the facts of the case).

Even treating Defendant's argument as one concerning relevance, it would still not require exclusion of Dr. Fales' opinions—at least not at this point.  First, it is not clear Plaintiffs must prove Island EMS fell below some objective standard.  Second, even if Plaintiffs were required to prove objectively inadequate EMS services, Dr. Fales' opinions could still be deemed relevant to other issues in the case.  For example, Dr. Fales opines on ways in which McIntosh County is better served compared to Sapelo Island.  See e.g., Doc. 273-2 at 28–30 (describing how recommendation C-1 demonstrates McIntosh County is better served than Sapelo Island because a more formal response plan appears to be in place for the County's mainland).  Additionally, as Plaintiffs point out, Dr. Fales' opinions can also be used to rebut Defendant's argument that some changes to Island EMS are simply not feasible because the Island's geography or the County's budget.  Doc. 339 at 10.  Put another way, Dr. Fales' opinions are likely relevant to Defendant's purported non-discriminatory reasons for disparities in EMS services on and off the Island.  See Defs.' Mot. for Summ. J., Doc. 274-1 at 3 ("Geographical limitations prevent any person on the mainland from serving as a similarly situated comparator to persons on an island only accessible by boat or by air."); Id. at 14 ("Geographical constraints pose certain immutable challenges with respect to emergency response to isolated barrier islands . . . .").

Accordingly, I find these additional arguments concern the weight, credibility, or relevance of Dr. Fales' opinions, not admissibility. As explained above, Dr. Fales's opinions are sufficiently reliable. Plaintiff remains free to attack the weight, credibility, and relevance of Dr. Fales' opinions at a later time.

### B.     Assistance to the Trier of Fact

Defendant also challenges the helpfulness of parts of Dr. Fales' testimony. Defendant argues the McDonnell-Douglas burden shifting framework, which it asserts is applicable in this case, requires Plaintiffs to identify similarly situated comparators outside of Plaintiffs' protected class who were treated better than they were. Doc. 273 at 9 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); Doc. 347 at 5–6. Thus, Defendant seeks to exclude testimony from Dr. Fales recommending improvements to the whole county, arguing such recommendations are irrelevant.[2] Doc. 273 at 9. Specifically, Defendant seeks to exclude seven recommendations, identified in the Report as A3, A4, C1, C2, C6, C7, and C9, which apply to both the County and the Island. Id. These recommendations, according to Defendant, fail to assist the trier of fact in understanding evidence or determining a fact at issue. Id.; Doc. 347 at 6.

Plaintiffs respond by arguing Dr. Fales' report and testimony will assist the average person who is not likely to be familiar with EMS systems, thus satisfying the Daubert inquiry. Doc. 339 at 11. Moreover, Plaintiffs counter Defendant's argument that recommendations benefitting both the County and the Island are irrelevant, arguing Sapelo Island is within McIntosh County, so, improvements to better serve the Island may have the residual effect of

---

[2]     In Defendant's Reply, it contends most of the recommendations in Dr. Fales' Report apply equally to the County and the Island. Doc. 347 at 6. But Defendant points to only 7 of Dr. Fales' 26 recommendations as applying to both McIntosh County and Sapelo Island. Doc. 273 at 9. Defendant does not reconcile these two positions in its briefing. Nevertheless, the Court will look to Defendant's more specific objections contained in its Motion.

also improving County services. Id. at 12–13. Further, Plaintiffs reject Defendant's assertion the McDonnell-Douglas burden shifting framework applies and instead argue the correct legal standard comes from the Supreme Court's decision in Village of Arlington Heights v. Metropolitan Housing Development Corporation, 429 U.S. 252 (1977), which does not require comparator evidence for an intentional discrimination claim. Id. at 12. The Court need not address which standard applies to determine whether the evidence is helpful based on the factual disputes between the parties.

Under Daubert, evidence is helpful (i.e., it will assist the trier of fact) if it "concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262–63. Expert testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted). Dr. Fales' Report is sufficiently helpful because the operation, design, and assessment of emergency medical services systems is likely beyond the understanding of the lay person. Jackson v. Catanzariti, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing Frazier, 387 F.3d at 1262) (permitting expert testimony when the testimony is explaining something "beyond the understanding of the average lay person").

As to Defendant's specific objections to recommendations A3, A4, C1, C2, C6, C7, and C9,[3] doc. 273 at 9–10, the Court disagrees with Defendant's contention that recommendations

---

[3] Recommendation A3 provides that the McIntosh County EMS should use Wiregrass 911 to adopt a formal 911 system. Doc. 273-1 at 48. Recommendation A4 provides the County should adopt a tiered response plan for the Sapelo Island EMS Response Plan based on patient acuity. Id. Recommendation C1 provides McIntosh County should develop a form EMS Response Plan for Sapelo Island. Id. at 49. Recommendation C2 also provides McIntosh County EMS should work in collaboration with Wiregrass 911. Id. Recommendation C6 provides McIntosh County should develop a training program for first responders serving Sapelo Island to ensure effective EMS. Id. Recommendation C7 provides McIntosh

A4, C1, C6 and part of recommendation C7 apply to both the Island and the County. These recommendations specifically relate to purported shortcomings in the EMS services provided on Sapelo Island or ways to address deficiencies in the current EMS system as it relates to the Island. Though some of these recommendations may have the residual effect of improving McIntosh County's overall EMS system, that is an inevitable result of the relationship between the two groups—improving services to one group may also improve services to another group. Put another way, a rising tide lifts all ships.

Recommendations A3, C2, part of C7, and C9, however, are about deficiencies at the county level, not specific to Sapelo Island. Defendant asserts these recommendations are not relevant under the McDonnel-Douglas framework because they do not provide comparator evidence. Even assuming, for the sake of argument, Defendant is correct that Plaintiffs must present adequate comparator evidence, Dr. Fales' opinions on county-wide improvements may still be relevant to other matters. Indeed, Dr. Fales' opinions need only logically advance a material aspect of the case for them to be sufficiently helpful under Rule 702 and Daubert. As noted above, Defendant ostensibly argues certain changes could not be implemented due to the geography of the Island and the County's budget, thus arguing these facts may legitimate non-discriminatory reasons for disparities in EMS service. Dr. Fales' county-wide assessments may logically advance Plaintiffs' case in responding to Defendant's arguments regarding the feasibility of certain improvements. Additionally, the opinions provide context for Dr. Fales' overall assessment and other opinions, and the Daubert standard does not require each line of an

---

County EMS should established a quality improvement program. Id. at 50. Recommendation C9 provides McIntosh County EMS should apply for a federal grant to help better serve both the County as a whole and the Island. Id.

17

expert's opinion to read in a vacuum and assessed for relevancy.[4]  Thus, even the county-wide recommendations may help a trier of fact determine a fact at issue.  Dr. Fales' opinions should not be excluded on the grounds the opinions are unhelpful to the jury.

## CONCLUSION

For the foregoing reasons, I **DENY** Defendant's Motion to Exclude.  Dr. Fales' opinions, as described in his Report, shall not be excluded under Rule 702 and Daubert.  In so ruling, the Court expresses no view regarding the persuasiveness of Dr. Fales' opinions.

**SO ORDERED**, this 23rd day of November, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4]  This Court's decision about helpfulness under Daubert does not prohibit Defendant from raising other objections at trial, such as objections based on Federal Rule of Evidence 403.