IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MELVIN BANKS, SR., et al., | |
| Plaintiffs, | CIVIL ACTION NO.: 2:16-cv-53 |
| v. | |
| MCINTOSH COUNTY, GEORGIA, | |
| Defendant. | |

**O R D E R**

In this civil lawsuit, Plaintiffs—all of whom are African American individuals claiming some connection to Hogg Hummock, a Gullah-Geechee community on Sapelo Island, Georgia—allege that Defendant McIntosh County ("McIntosh County" or the "County") has discriminated against them on account of their race by providing inferior services to their community. (Doc. 206.) On March 30, 2021, the Court granted in part and denied in part the County's Motion for Summary Judgment. (Doc. 359.) Presently before the Court is a Motion for Reconsideration filed by the County, (doc. 361), as well as a Motion for Reconsideration filed by Plaintiffs, (doc. 363). For the following reasons, the Court **DENIES** the County's Motion for Reconsideration, (doc. 361), and **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Reconsideration, (doc. 363).

**BACKGROUND**[1]

Prior to the Court's summary judgment Order, the group of Plaintiffs included several individuals who either admitted that they did not own property on Sapelo Island or lacked evidence

---

[1] A more comprehensive recitation of the facts underlying this litigation can be found in the Court's March 30, 2021 summary judgment Order. (Doc. 359, pp. 2–18.)

of such ownership. (See doc. 359, pp. 7–10.) In their Second Amended Complaint, which is (and, at the time the Court issued its Order, was) the operative pleading, Plaintiffs allege several discrimination claims including a Title VI claim (Count IV). (Doc. 206, pp. 92–93.) Plaintiffs assert that the County provided inferior services to Hogg Hummock on account of their race. (Id. at pp. 49–80.) These inferior services include the alleged poor maintenance of roads in Hogg Hummock as compared to the maintenance of the roads on the mainland, where the population is predominately white. (Id. at pp. 56–59.) Plaintiffs also allege, inter alia, that the County received federal funds for water services but did not use any of those funds for water services on Sapelo Island. (Id. at pp. 60–61.)

In its Motion for Summary Judgment, the County argued that several Plaintiffs did not have any property interest on Sapelo Island, and thus lacked standing to sue. (Doc. 274, pp. 34–36.) With regard to road services, the County asserted that it did not own the roads in Hogg Hummock and had no responsibility for their upkeep. (Doc. 354, pp. 29–32.) It also argued that it had not discriminated in the provision of water services because the State—not the County—provided water to Sapelo Island. (Id. at p. 35.) In response, Plaintiffs argued that—for various reasons—they all had standing to pursue their claims, that questions of fact existed as to whether the County owned the roads in Hogg Hummock, and that the County had discriminated against them by providing funding to improve the water provided to many mainland residents while not investing any money to improve the water quality in their community. (Doc. 341, pp. 19–24, 78–80.)

The Court ultimately granted in part and denied in part the County's Motion for Summary Judgment. (Doc. 359.) In the Order, the Court determined that several Plaintiffs had not produced evidence that they had an ownership interest in property on Sapelo Island and thus did not have a sufficient injury for standing in the case. (Id. at pp. 30–38.) The Court also found that questions

of fact existed as to whether the County owned roads on Sapelo Island, so the County was not entitled to summary judgment on Plaintiffs' claim for inferior road maintenance. (Id. at pp. 57–58.) However, the Court found that Plaintiffs had not presented sufficient evidence to survive summary judgment on the issue of whether the County provided inferior water services and thus granted summary judgment to the County as to Counts II and III to the extent they were based on, *inter alia*, discriminatory water service. (Id. at p. 55.) For the same reason, the Court also granted summary judgment as to Count IV, which alleged violations of Title VI.[2] (Id. at p. 56.)

On April 20, 2021, the County filed its Motion for Reconsideration. (Doc. 361.) Plaintiffs then filed their own Motion for Reconsideration. (Doc. 363.) Both Motions have been fully briefed. (Doc 365; doc. 367; doc. 370; doc. 371.)

## LEGAL STANDARD[3]

"In considering a motion for reconsideration, a court must balance the need for finality and judicial economy against the need to render just decisions." Collins v. Int'l Longshoremen's Ass'n

---

[2] After noting that "Title VI prohibits discrimination on account of race, color, or national origin in all programs and activities receiving federal financial assistance," (doc. 359, p. 56 (quoting Humphrey v. United Parcel Service, 200 F. App'x 950, 952 (11th Cir. 2006)), the Court concluded that, based on the evidence, water service was the only municipal service for which the County received federal funds and, since Plaintiffs were unable to show discrimination as to water services, summary judgment as to Count IV was appropriate. (Id.)

[3] Plaintiffs filed their Motion pursuant to Rule 59(e), (doc. 363, p. 1), and the County filed its Motion pursuant to Rule 60(b), (doc. 361, p. 1). However, both Rule 59(e) and Rule 60(b) only apply to a district court's final judgment. See Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 862 (5th Cir. 1970), *abrogated on other grounds by* Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994) ("The district court's denial of [defendant's] motion for summary judgment . . . was only an interlocutory order and thus not subject to being vacated under Rule 60(b)."); see also Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting the decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, as binding precedent of the Eleventh Circuit); Davis v. Bobby Jones Ford, Inc., CV 111–095, 2012 WL 13005400, at *1 (S.D. Ga. May 7, 2012) ("Rules 59(e) and 60(b) are only available for relief from a final judgment."). Because both Plaintiffs and the County are seeking reconsideration of the Court's partial grant of summary judgment, the court will review these motions under Rule 54(b). See Covenant Christian Ministries, Inc. v. City of Marietta, 654 F.3d 1231, 1242 (11th Cir. 2011); Fed. R. Civ. P. 54(b).

Local 1423, No. CV 209-093, 2013 WL 393096, at *1 (S.D. Ga. Jan. 30, 2013) (citation omitted). Under Federal Rule of Civil Procedure 54(b), district courts have the discretion to reconsider interlocutory orders at any time before final judgment.  Watkins v. Capital City Bank, No. CV 310-087, 2012 WL 4372289, at *4 (S.D. Ga. Sept. 24, 2012); Lambert v. Briggs & Stratton Corp., No. Civ.A. CV604-016, 2006 WL 156875, at *1 (S.D. Ga. Jan. 19, 2006).

Although the text of Rule 54(b) does not specify a standard by which courts evaluate motions, courts in this circuit "have taken the position that a motion for reconsideration should only be granted if there is (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct clear error or prevent manifest injustice." Insured Deposits Conduit, LLC v. Index Powered Fin. Servs., LLC, No. 07-22735-CIV, 2008 WL 5691349, at *2 (S.D. Fla. Mar. 14, 2008); accord Bryant v. Jones, 696 F. Supp. 2d 1313, 1320 (N.D. Ga. 2010). Because reconsideration "is an extraordinary remedy to be employed sparingly," the movant "must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision." Burger King Corp v. Ashland Equities, Inc., 181 F. Supp. 2d 1366, 1369, 1370 (S.D. Fla. 2002); accord Voter Verified, Inc. v. Election Sys. & Software, Inc., No. 6:09-cv-1969-Orl-19KRS, 2011 WL 3862450, at *2 (M.D. Fla. Aug. 31, 2011); see also Armbuster v. Rosenbloom, No. 1:15-cv-114, 2016 WL 1441467, at *1 (S.D. Ga. Apr. 11, 2016).  "A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented" before the original decision.  S.E.C. v. Mannion, No. 1:10-cv-3374-WSD, 2013 WL 5999657, at *2 (N.D. Ga. Nov. 12, 2013); accord Armbuster, 2016 WL 1441467, at *1 ("[I]t is improper on a motion for reconsideration to ask the Court to rethink what the Court has already thought through – rightly or wrongly.") (citation and internal quotation marks omitted).

## DISCUSSION

Both Plaintiffs and the County move for reconsideration of the Court's summary judgment Order. (Doc. 361; doc. 363.) The Court will first address the County's Motion for Reconsideration, (doc. 361), and then will examine the Plaintiffs' Motion, (doc. 363).

### I. The County's Motion for Reconsideration

The County moves the Court to "reconsider the portion of its [O]rder denying [its] Motion for Summary Judgment with respect to Plaintiffs' claims concerning the maintenance of roads on Sapelo Island." (Doc. 361, p. 1.) In its summary judgment briefing, the County argued that it did not act discriminatorily with regard to road maintenance because it does not own the roads in Hogg Hummock and thus had no obligation to maintain them. (Doc. 354, pp. 29–32.) In its Order, the Court determined that questions of fact remained as to the ownership of the roads, precluding summary judgment. (Doc. 359, pp. 57–58.) Specifically, the Court noted that while the record contained evidence from the minutes of a 1925 McIntosh County Board of Commissioners meeting that stated that the County had, at that time, "discontinued" the public roads on Sapelo Island, (id. at p. 57; doc. 345-21, p. 2), the record also contained a 2010 resolution by the McIntosh County Board which provided that "the McIntosh County Board of Commissioners has never declared any of [the public] roads [on Sapelo Island] to be abandoned, nor has such Board transferred ownership of them to any other entity or person, and currently maintains some roads on Sapelo Island," (doc. 344-24, p. 7). (Doc. 359, p. 57.) After examining Georgia law, the Court determined that it was unable to say that the County had fully and effectively abandoned its ownership of the roads in 1925 because it was not clear whether, at the time of "discontinu[ance]" (in 1925), the County owned the roads in fee simple. (Id. at p. 58.) Ultimately the Court found that, "based on the present record . . . [it could not] say as a matter of law that McIntosh County abandoned all its

5

interests in the roadway land on Sapelo Island in 1925," and the Court thus denied summary judgment. (Id.)

In its Motion for Reconsideration, the County argues that, "[h]ad the full transcript of the [Federal Rule of Civil Procedure] 30(b)(6) deposition of County Attorney Ad Poppell been included in the record, it would have answered the lingering questions that prevented the Court from accepting the County's position that it does not own the roads on Sapelo Island." (Doc. 361, p. 2.) According to the County, Plaintiffs bore the sole responsibility of filing the full transcript of that deposition but failed to do so. (Id.)

The docket in this case indicates that, on July 31, 2020 (the same day it filed its Motion for Summary Judgment), the County filed a "Request for Filing of Original Discovery," which requested that Plaintiffs file the full original transcripts of several depositions, including that of "Adam Strain Poppell III." (Doc. 325.) Southern District of Georgia Local Rule 26.4 provides in pertinent part that

> (a)  Counsel in possession of original discovery materials, including depositions and all written discovery requests and responses, shall act for the Court as custodian of such materials and shall preserve them for filing as provided in Fed. R. Civ. P. 5(d) and subsection (b) of this rule.
>
> (b)  A request to the custodian to file original discovery materials shall specify the particular materials or portions thereof which the requesting party desires to have filed, and the custodian shall file such materials promptly upon receiving the request.

It is clear from the record that Plaintiffs did not file the full transcripts of the depositions that the County requested. However, it is equally clear that the County never moved the Court to order Plaintiffs to comply with the Rule 26.4 request. Nowhere in the plain language of the Local Rule does it state that the Court should or shall *sua sponte* instruct a custodial party to comply with a

6

Rule 26.4 request if it has failed to do so after some period of time.[4]  See Clark v. Hous. Auth. of City of Alma, 971 F.2d 723, 727 (11th Cir. 1992) ("[The Eleventh Circuit Court of Appeals] gives great deference to a district court's interpretation of its local rules.").  Moreover, the County does not point the Court to any authority that discouraged—much less prohibited—it from filing its own copy of the Poppell deposition transcript, which the Court presumes the County possessed given that its Brief in Support of Summary Judgment repeatedly cited specific page and line numbers from the transcript.[5]  (See, e.g., doc. 274-1, pp. 6–12, 15, 17–21.)

Parties should not and cannot expect the Court to use its valuable time and resources—particularly in a case of this scale, with dozens of Plaintiffs and a host of claims—to scour the record to ensure that all discovery materials requested by any and all parties have been filed with the Court by the custodial party.  The administration of justice would further be hindered if the Court was then required to put its consideration of a motion on hold so that it could order and wait for the custodial party (or parties) to file the missing discovery materials.  The burden must, therefore, ultimately lie with the requesting party to ensure that the original discovery materials

---

[4]  In its Motion, the County notes that, in an unrelated case in which the County's counsel happens to be serving as counsel for a different client, another Judge in this district *sua sponte* issued an order compelling a custodial party to comply with an opposing party's Rule 26.4 request.  (Doc. 361, p. 4.)  That Order was issued on December 3, 2020, see New Covenant Church, Inc. v. Carla Futch, No. 2:19-cv-40, doc. 108 (S.D. Ga. Dec. 3, 2020), which was more than four months after the County filed its Rule 26.4 request in this case and two months after Plaintiffs in this case filed their Response to the County's Motion for Summary Judgment (along with their own exhibits).  Consequently, the County logically could not have reasonably relied upon that Judge's order when not following up on its Rule 26. 4 request in this case.  Moreover, the County cannot reasonably claim that this isolated act by a different judge in an unrelated case indicates that there is some course of practice or expectation in this district whereby judges will *sua sponte* compel custodial parties to comply with Rule 26.4 requests where the requesting party has declined to affirmatively seek such relief.  If anything, the Order by the District Judge in the unrelated case should have prompted the County to ensure that Plaintiffs had complied with its request in this case, particularly since the County had opted not to file its own copy of the at-issue deposition transcript (or, at the very least, the relevant excerpts) as an exhibit to the Motion for Summary Judgment.

[5]  Indeed, the Court is not aware of any authority requiring a Court to rely exclusively upon the *original* transcript of a deposition when ruling on a motion for summary judgment and prohibiting it from considering a copy of the deposition.

upon which it wishes to rely have been made a part of the record before the Court (and, if they have not, alert the party in possession of the discovery materials, and then, if necessary, alert the Court through a motion to compel).  This is particularly appropriate where, as here, the requesting party neglects to include, as an exhibit to its motion for summary judgment, a copy of the relevant deposition excerpts to which it has cited.  As a result, the Court declines to reconsider its ruling on Plaintiffs' road maintenance claims in light of Poppell's 30(b)(6) deposition transcript.

However, even if the Court did consider the testimony that the County now cites, it would not conclusively resolve the issue about ownership and responsibility for maintenance of the roads. In his 30(b)(6) deposition, Poppell testified that "the record indicates . . . that we abandoned the roads to the owner of Sapelo" and that "in an abandonment proceeding, the way [he] underst[ood it], [McIntosh County] ambandon[ed] their ownership and there may be one or two or three other people that are claiming it, but McIntosh County is saying 'we don't own it.'" (Doc. 364-8, pp. 83–84.) He also stated that that McIntosh County "gave [the roads] up in 1925" and that McIntosh County did not have any property on Sapelo Island "until about 1989." (Id. at pp. 99, 102).  The County argues that Poppell's testimony proves that the County "did not own or have rights to any land on Sapelo Island prior to its 1989 acquisition of [a] half-acre parcel" and that "the land underlying the major roadways in Hogg Hammock was not owned by the County at the time the County abandoned the public roads on Sapelo in 1925." (Doc. 361, p. 10.)  However, the Court cannot disregard the fact that the County's 2010 resolution said the County had never declared any public roads on Sapelo Island abandoned and had never transferred ownership of them to "any other entity or person." (Doc. 359, p. 57.)  Thus, regardless of Poppell's 30(b)(6) testimony as to his "understanding" of what happened in 1925, there is still a material dispute of fact on this issue. Moreover, when the Court considers the context of Poppell's testimony in the cited pages, it is

apparent that, since he was not personally involved in the 1925 discontinuance, he is not certain exactly what happened. (See doc. 364-8, p. 84 (Poppell admits that he was "not sure what [the process for abandonment] was" in 1925.)).

Furthermore, even if the roads and the land under them were fully and effectively abandoned by the County (and put into private ownership) in 1925, under Georgia law, land can become public if the owner dedicates it to that purpose. See O.C.G.A. § 44-5-230. "A private landowner may dedicate land by setting it apart for public use, but it must be accepted by the county before it becomes a county road." Watson v. Clayton Cnty., 447 S.E.2d 162, 163 (Ga. Ct. App. 1994) (citation omitted). "[A]cceptance of property set aside by the owner to a public use will be implied where it is improved and maintained for such use by authorized public officials out of tax funds." Smith v. Gwinnett Cnty., 286 S.E.2d 739, 742 (Ga. 1982) (alteration in original) (citation omitted). Here, Plaintiffs argued that even if the County had abandoned the roads, "they were subsequently dedicated to public use by the actions of Hogg Hummock landowners" and "the County accepted them by occasionally maintaining them (however inadequately) for decades." (Doc. 341, p. 79.) In response the County argued that it only provided maintenance for the roads on the Island "at the request of the State." (Doc. 354, p. 32.) However, according to McIntosh County Assistant Public Works Director Harold Young, McIntosh County residents can call their commissioner to request road work. (Doc. 364-3, pp. 9, 21.) The record shows that a Hogg Hummock resident contact Commissioner Charles Jordan to complain about road maintenance. (Doc. 343-27, p. 30.) In addition, Young stated that Commissioner Jordan contacted him and relayed requests from Sapelo Island residents about performing road maintenance on the Island and that, after conferring with the county manager, he would carry out these requests. (Doc. 364-3, pp. 35–36, 46.) From this evidence, a jury could find that, regardless of Poppell's testimony

that the County abandoned the roads on Sapelo Island in 1925, it has since rededicated at least some of them as public roads through its actions and the actions of the area property owners. Thus, factual questions remain concerning the ownership of the roads on Sapelo Island, and summary judgment on this issue is improper. Accordingly, the Court **DENIES** the County's Motion for Reconsideration. (Doc. 361.)

## II. Plaintiffs' Motion for Reconsideration

Plaintiffs also filed their own Motion for Reconsideration. (Doc. 363.) Plaintiffs move the Court to reconsider three parts of its summary judgment Order. (Id.) First, Plaintiffs argue that the Court erred in dismissing those individuals who did not own property on Sapelo Island for lack of standing. (Id. at pp. 3–7.) Next, Plaintiffs assert that the Court incorrectly dismissed three Plaintiffs—David Grovner, Sr. (on behalf of himself and on behalf of the estate of Vernell Grovner), Brenda Jackson, and Harry Jordan—for lack of standing because, they say, there is evidence that they own property on Sapelo Island. (Id. at pp. 7–8.) Finally, Plaintiffs argue that the Court should not have dismissed their Title VI claim. (Id. at pp. 8–12.) The Court will examine each of these arguments in turn.

### A. Plaintiffs Who Do Not Own Property

Plaintiffs contend that "[t]he Court erred in concluding that Plaintiffs who are residents of Sapelo Island, but who do not have an individual property ownership interest on the Island, lack standing to sue for the discriminatory provision of municipal services." (Doc. 363, p. 3.) Plaintiffs have already argued this issue before the Court, (doc. 341, pp. 19–24), and "motions for reconsideration may not be used to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003). In addition, in their Motion, Plaintiffs

10

primarily rely on the United States Court of Appeals for the Eleventh Circuit's decisions in Ammons v. Dade City and Dowdell v. City of Apopka to support their argument that they have standing regardless of property ownership. (Doc. 363, pp. 4–5 (quoting Ammons v. Dade City, 783 F.2d 982, 983 n.1 (11th Cir. 1986) and Dowdell v. City of Apopka, 698 F.2d 1181, 1184 (11th Cir. 1983)).) However, the Eleventh Circuit does not address the issue of standing in either of those cases. In addition, both cases predate the United States Supreme Court's "seminal standing opinion Lujan v. Defenders of Wildlife." Const. Party of Pa. v. Aichele, 757 F.3d 347, 360 (3d. 2014) (discussing Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)). Thus, to the extent any standing analysis could be read into either Ammons or Dowdell, such analysis would not reflect current doctrine. Ultimately, Plaintiffs have not pointed to any authority from the Eleventh Circuit showing that individuals without an ownership interest in any property on Sapelo Island experienced a harm sufficient for standing in this case. Accordingly, the Court **DENIES** Plaintiffs' Motion to the extent they seek for the Court to reconsider its decision to dismiss those Plaintiffs who do not own property on Sapelo Island for lack of standing. (Doc. 363.)

### B. Plaintiffs Who Claim That They Have Shown an Ownership Interest in Property on Sapelo

Plaintiffs also argue that Brenda Jackson, Harry Jordan, and David Grovner, Sr. (on behalf of himself and on behalf of the Estate of Vernell Grovner) all have "legal ownership interests in Sapelo Island property." (Id. at p. 7.)

In its summary judgment Order, the Court determined that Harry Jordan and Brenda Jackson transferred their interests in Sapelo Island property to their brother Charles Jordan. (Doc. 359, pp. 27–28.) The Court then determined that,

> [w]hile Charles Jordan died intestate, neither Harry Jordan nor Brenda Jackson state in their respective depositions that they have inherited the Sapelo Island property from Charles Jordan. In addition, the record does not show that any property has

>been transferred to either Harry Jordan or Brenda Jackson since Charles Jordan's death.

(Id. at p. 28 (internal citations removed).)  In their Motion for Reconsideration, Plaintiffs argue that Brenda Jackson and Harry Jordan "inherited their late brother's parcel per operation of [O.C.G.A. § 53-2-1] which provides the rules for intestate succession applicable here." (Doc. 363, p. 8.)  However, the same Georgia statutory scheme for intestate succession also provides that "[a]ny individual claiming to be an heir . . . under the laws of intestacy may apply to either the probate court or the superior court specified in Code Section 53-2-20 to have the claim of heirship and quantity of interest established." O.C.G.A. § 53-2-22.  In addition, Georgia caselaw states that "[p]ersons claiming the right to take an estate as heirs . . . have the burden of proving facts necessary to sustain their rights, including the death of the alleged intestate, the relationship to him of the alleged heirs . . ., and that there are no other relatives entitled to take before them." O'Regan v. Brennan, 418 S.E.2d 389, 390 (Ga. Ct. App. 1992) (citation omitted).  As the Court previously made clear in its Order, "[t]he hallmark of property . . . is an individual entitlement grounded in state law . . . ." (Doc. 359, p. 28 (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982)).  Brenda Jackson and Harry Jordan have not proved the facts necessary—much less shown that they have gone through the judicial process—to sustain their rights to take any Sapelo Island property owned by Charles Jordan under the Georgia intestacy statutes.  Accordingly, the Court **DENIES** Plaintiffs' Motion for Reconsideration to the extent it seeks to have the Court reconsider its decision to dismiss Brenda Jackson and Harry Jordan.  (Doc. 363.)

Plaintiffs also argue that the Court should not have dismissed David Grovner, Sr.—who is asserting claims on both his own behalf and on behalf of his late wife, Vernell Grovner—for lack of standing. (Id. at pp. 7–8.)  The Court dismissed David Grovner, Sr., after finding that, although evidence showed that Vernell Grovner devised all of her property to him, there was no evidence

that Vernell Grovner had owned property on Sapelo Island.  (Doc. 359, p. 33.)  Plaintiffs argue that evidence in the record did show that Vernell Grovner owned property on Sapelo Island.  (Id. at p. 7.)  Specifically, they point to a property value assessment document taken from qPublic.net which lists a "Vernell Grovenor" [sic] and "David Grovner" as owners of a parcel of land on Sapelo Island.  (Doc. 346-20, p. 2.)  The Court notes that although the document was in the record at the time the Court considered the County's Motion for Summary Judgment, Plaintiffs did not cite to it in their Response brief when arguing that Vernell and David Grovner, Sr., owned Sapelo Island property.  (Doc. 341, pp. 101–02.)  At the summary judgment stage, this case dealt with individual inquiries into standing for several dozen Plaintiffs, and the parties together submitted more than two hundred exhibits.  The Court does not have an obligation "to comb the record to find some reason to deny a motion for summary judgment."  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted); see also U.S. v. 5443 Suffield Terrace, Skokie, Ill., 607 F.3d 504, 510 (7th Cir. 2010) ("[I]t was not the district court's job to sift through the record and make [the party's] case for him."); Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56 . . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition."). Nevertheless, the Court agrees that it erred in finding that no question of fact existed as to whether Vernell Grovner and David Grovner, Sr., owned property on Sapelo Island.  Accordingly, the Court finds that David Grovner, Sr. (on behalf of himself and on behalf of the Estate of Vernell Grovner) has provided evidence from which the jury could find that he (and the estate of Vernell Grovner) owned property on Sapelo Island and thus has carried his burden on the issue of standing.  Accordingly, the Court **GRANTS** Plaintiffs' Motion for Reconsideration as to the dismissal of

David Grovner, Sr. (on behalf of himself and on behalf of the Estate of Vernell Grovner).  (Doc. 363.)

### C. Plaintiffs' Title VI Claim

Finally, Plaintiffs argue that "the Court's dismissal of Plaintiffs' Title VI claims was based on an erroneous interpretation of the statute." (Doc. 363, p. 12.)  In its Order, the Court determined that Plaintiffs had not produced sufficient evidence that the County had acted against them with discriminatory purpose and effect in its provision of water services.  (Doc. 359, pp. 54–56.)  Because the evidence showed that most of the federal funds received by the County were to be used for water services and in light of the fact that there was insufficient evidence of discrimination in provision of such services, the Court dismissed Plaintiffs' Title VI claim.[6]  (Id. at p. 56.)  Plaintiffs argue that the Court incorrectly interpreted Title VI too narrowly, as only prohibiting the County from discriminatorily *spending* federal funds when it also generally prohibits discrimination in any County operation upon receipt of federal funds. (Doc. 363, pp. 8–12.)  After reviewing the relevant caselaw, the Court agrees.

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  In interpreting this statute, the Supreme Court has broadly declared that it essentially "condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998).  In addition, the Eleventh Circuit has stated

---

[6] While the record also indicated that the County received some federal funds through the Georgia Community Development Block Grant Program, the Court found that Plaintiffs had not shown that this money was allocated with discriminatory intent or effect. (Doc. 359, p. 56 n.27.)

that Congress, by passing the Civil Rights Restoration Act of 1987 ("CRRA"), intended for Title VI to have "broad, institution-wide application." Lussier v. Dugger, 904 F.2d 661, 665 (11th Cir. 1990). Since that time, other district courts in the Eleventh Circuit have interpreted Title VI and the other anti-discrimination statutes covered by the CRRA to prohibit a government entity from discriminating if part of that entity received funds, regardless of whether those funds were specifically used for discrimination. The decision issued by another court in this circuit, in American Association of People with Disabilities v. Hood, 278 F. Supp. 2d 1345 (M.D. Fla. 2003), is particularly instructive. In that case, the plaintiffs sued the Florida Department of State for, among other things, violating the Rehabilitation Act[7] by failing to provide a voting system that would permit manually and visually impaired voters to vote without third-party assistance. Id. at 1350–51. The Florida Department of State argued that it was not subject to the Rehabilitation Act because it had not received federal funding for election-related activities. Id. at 1354 n.8. The court rejected this argument, finding that "[t]he plain language of the statute and its legislative history indicate that if any part of a state department receives federal financial assistance, then the entire department is covered." Id. The district court concluded that "[t]he undisputed facts of record in this case demonstrate that parts of the Florida Department of State have receive[d] federal financial assistance, thus obliging the whole department to comply with Section 504 of the Rehabilitation Act." Id.

---

[7] Since Title VI and the Rehabilitation Act define "program or activity" in identical terms as a result of the CRRA, see Pub. L. No. 100-259, §§ 2, 4, 6, case law interpreting the text of the Rehabilitation Act is applicable in determining the scope of Title VI. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 589–90 (2010) ("We have often observed that when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'") (citing Bragdon v. Abbott, 524 U.S. 624, 645 (1998)).

Based upon the cumulative weight of this authority, the Court concludes that it manifestly erred in granting summary judgment on Plaintiffs' Title VI claim. Plaintiffs have put forth evidence that the County has received federal funds. (Doc. 344-11, pp. 2–8; doc. 344-7, p. 2.) Plaintiffs have also provided sufficient evidence so that a reasonable trier of fact could find that the County acted with discriminatory purpose and effect with regard to the provision of fire services, trash services, emergency medical services, and road maintenance. (Doc. 359, pp. 44–55.) This is enough for Plaintiffs' Title VI claim to survive summary judgment.[8]  See, e.g., Bd. of Pub. Educ. for City of Savannah & Cnty. of Chatham v. State of Ga., No. 4:90-cv-101, 1990 WL 608208, at *6 n.7 (S.D. Ga. Sept. 24, 1990) ("Title VI . . . was meant to allow suit against an entire system for discriminatory practices of a discrete program within that system."). Accordingly, the Court **GRANTS** Plaintiffs' Motion for Reconsideration to the extent it seeks for the Court to reconsider its grant of summary judgment in favor of Defendant on Plaintiffs' Title VI claim.[9] (Doc. 363.)

## CONCLUSION

In light of the foregoing, the Court **DENIES** McIntosh County's Motion for Reconsideration. (Doc. 361.) The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs'

---

[8] This result is also consistent with the Court's January 17, 2020 Order, which determined that McIntosh County, through its Board of Commissioners, was a "program or activity" under Title VI. (Doc. 240, pp. 12–15.)

[9] The Court notes that the two-year statute of limitations for a Title VI claim is the same as for Plaintiffs' 42 U.S.C. § 1982 claim. See Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996) ("[A]s to section 2000d [of Title VI], we hold that Georgia's two-year personal injury limitations period applies."); Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1216 (11th Cir. 2001) ("The absence of a statute of limitations in the language of . . . [Section] 1982 is a deficiency . . . that must be filled through reference to appropriate state law."); O.C.G.A. § 9-3-33 ("[A]ctions for injuries to the person shall be brought within two years after the right of action accrues."). Both parties have already briefed whether Plaintiffs' Section 1982 claims involving the discriminatory provision of fire services, trash services, emergency medical services, and road maintenance should be barred by the applicable two-year statute of limitations. (Doc. 360-1; doc. 369.) Accordingly, the Court should be equipped to assess whether Plaintiffs' Title VI claim is barred by the two-year statute of limitations without requiring additional briefing from any party.

Motion for Reconsideration. (Doc. 363.) The Court **DIRECTS** the Clerk of Court to reinstate David Grovner Sr. as a Plaintiff in this case both on behalf of himself and on behalf of the Estate of Vernell Grovner and to update the docket accordingly. In addition, Plaintiffs may proceed on their Title VI claim (Count IV) to the extent that claim is based on discriminatory road maintenance, trash services, emergency medical services, and fire services. The remainder of the Court's March 30, 2021 Order remains in effect. (Doc. 359.)

    **SO ORDERED**, this 26th day of July, 2021.

                              R. STAN BAKER
                              UNITED STATES DISTRICT JUDGE
                              SOUTHERN DISTRICT OF GEORGIA